## ANDREW T. LESKINEN v. JOHN PUCELJ AND OTHERS. EDWIN KROGERUS AND OTHERS, APPELLANTS.

115 N. W. (2d) 346.

May 11, 1962—No. 38,099.

*Clarence H. Kleffman* and *Frank M. Talus,* for individual appellants and town of Balkan.

*John T. Naughtin* and *N. S. Chanak,* for appellant surety company.

*Arvid Nasi, Jr.,* for respondent.

OTIS, JUSTICE.

This action is brought by plaintiff, Andrew T. Leskinen, as a taxpayer of the town of Balkan in St. Louis County, to recover from the defendants in their various capacities as town treasurers, town supervisors, and surety, amounts which plaintiff alleges were unlawfully disbursed out of town funds. The action was tried without a jury to the district court and defendants were found liable. They appeal from an order denying their alternative motions for amended findings or a new trial.

The basic issues presented on appeal are, first, whether the town treasurers and their surety are liable to the town of Balkan for payments, authorized by the town supervisors and disbursed by the town treasurers, based on claims which plaintiff alleges were not properly itemized; and, second, whether the town supervisors are liable to the town of Balkan for payments authorized by them for the purchase of snow fencing and snowplow equipment from vendors who were not the low bidders.

The treasurers of the town of Balkan during the periods here in question were as follows: From March 1951 to March 1953, defendant Edwin Krogerus; from March 1953 to March 1955, defendant Vincent Russ; from March 1955 to March 1956, defendant Walter Haanpaa. They were all bonded by defendant Western Surety Company. The trial court found that each treasurer made unlawful disbursements during his tenure of office for which he and his surety are liable to the town in the following amounts: Defendant Krogerus, $919.25; defendant Russ, $1,031.50; defendant Haanpaa, $985.75.

The court held that the claims which were paid by these defendants were not properly itemized, were for flat amounts, were irregular on their face, and were paid in violation of Minn. St. 471.38. It is conceded that the amounts disbursed by the town treasurers were for expenses incurred by town officers and their employees in performing duties which they were authorized and required by law to discharge. The parties stipulated at the trial that if the payees of the disputed claims were called as witnesses, they would testify as follows:

"(a) That the sums set forth in their respective claims were actually expended for the purposes indicated, or for services rendered pursuant to the statute.

"(b) That the amounts claimed for expenses, or services rendered are fair and reasonable.

"(c) That each of said payees made the trip, rendered the services, or expended for necessary expenses the sums claimed."

Evidence thus adduced must be given the same force and effect as though the witnesses had testified in open court. Southdale Center, Inc. v. Lewis, 260 Minn. 430, 110 N. W. (2d) 857.

The questioned claims paid by the treasurers are all of the same general character and stem from the following town functions: Under Minn. St. 1953, § 20.11, subd. 2 (now Minn. St. 18.231), members of the town board had a duty to act as weed inspectors to examine roads and fields for noxious weeds and take necessary steps to eliminate or control them. Town officers assumed this responsibility rather than hiring an assistant as the statute authorized; and they presented claims for their services and mileage and for attending weed-inspection meetings at Virginia and Hibbing. The claims, which were approved by the town board and paid by the treasurers, were each in the sum of $15 and showed only the name of the payee, the claim number, the date, the amount, and the bare statement that the claim was for weed inspection during a specific period, or for mileage during that period, or for attending a meeting at a specific time and place.

In a similar manner the town officers presented claims for attending tax hearings and mineral-valuation and State Board of Equalization meetings in St. Paul, also proper town functions under § 270.19. The claims showed only the names of the payees, the claim numbers, the amounts, and a cryptic statement such as "necessary expenses" for meals, lodging, transportation while attending the various meetings, with the appropriate dates.

Some claims were presented for attendance at meetings of the recreation board, in which a round figure of $50 was charged to cover mileage and attendance for the year specified. § 471.15. Others were in flat amounts simply designated as mileage during the time indicated or as travel expense with or without specifying the period which was covered. In some instances the same amounts were claimed for attending different meetings held at widely varying distances.

■ Clearly the trial court was correct in finding that the claims which were presented to and paid by the town treasurers did not conform to the requirements of the statutes. Section 366.20 provides in part:

"* * * no allowance of any account shall be made which does not specifically state each item of the same."

And § 471.38 states:

"* * * where an account, claim or demand against any * * * town * * * for any property or services can be. itemized in the ordinary course of business, the board or officer authorized by law to audit and allow claims shall not audit or allow the claim until the person claiming payment * * * reduces it to writing, *in items* * * *." (Italics supplied.)

The purpose of the statute is to permit an audit of the claims and is frustrated by a failure to specify the precise expenses which were incurred or to establish the basis for compensating employees for services rendered. It is obvious nearly all of the claims were based on estimates, and it may well be that the actual sums expended exceeded the amounts claimed. Nevertheless, they are invalid if they do not comply with statutory requirements. We are of the opinion that it is incumbent on each payee to specify the dates and the manner in which he traveled, the distances he covered and the amount he charged per mile, or the actual cost of public transportation, if used. Where compensation is claimed for services rendered, the services should be described, hourly rates should be specified, and the time and place of performance set forth. In itemizing claims for attending meetings, it does not seem unreasonable to require in addition that the payee show separately the amounts actually expended each day for meals and lodging and for other legitimate purposes. While it is not our intention to delineate in detail the precise manner in which claims of this kind should in all cases be itemized, in our opinion it does not impose an unwarranted burden on town officers and employees to require that they adopt a system which conforms generally to the pattern we have outlined.

It is the contention of the defendants that in making payments the treasurers perform only a ministerial duty which does not require them to pass on the validity of disbursements ordered by the town board of audit pursuant to § 367.16(1), which states:

"It shall be the duty of the town treasurer:

"(1) To receive and take charge of all the moneys belonging to the town, or which are required to be paid into its treasury, and to

pay out the same only upon the order of such town or its officers, *made pursuant to law.*" (Italics supplied.)

The treasurer is required to pay only those claims ordered by the town board of audit which on their face are lawful, and is charged with notice of the provisions of §§ 366.20 and 471.38 directing that they be itemized. As we construe § 367.16(1), an order of the town officers is not "made pursuant to law" if it is based on a claim which on its face is improperly prepared.[1] Under such circumstances the town treasurer is not protected by the doctrine of Town of Buyck v. Buyck, 112 Minn. 94, 100, 127 N. W. 452, 454, where we stated:

"We are not to be understood as holding that a public treasurer, who disburses public money on warrants, or orders, fair upon their face, in good faith, and without knowledge of the facts showing the illegality of the claims upon which the order or warrant purports to have been issued, may be made liable for a return of the money upon a showing that the claim was not in fact a legal charge against the municipality he represents. In such a case he would undoubtedly be protected. * * * Such is not the case at bar."

To the extent that the claims cannot be properly itemized, the treasurers and their surety will therefore be held liable to the town of Balkan.

In the course of the trial the defendants moved for leave to amend the claims with a view to itemizing them correctly. After objection by plaintiff, the motion was denied. While we recognize that it will be difficult after a lapse of so many years, we think the defendants should have been afforded an opportunity to comply with the statute and we hold that it was an abuse of discretion to deny their motion. The matter is accordingly remanded with leave granted defendants to itemize the claims in a manner consistent with the decision we here reach.

■ Defendants assert that plaintiff has not established his status as a taxpayer; that defendants are insulated from liability in having relied on the advice of counsel; and that the plaintiff's claim is barred by laches.

---

[1] Here in each instance the claim and order for payment were part of the same instrument.

Although plaintiff alleges in his complaint that he was a taxpayer, no proof of his status was adduced at the trial. However, the court on its own motion suggested that this deficiency be rectified by taking additional testimony. Defendants objected but, without waiving any of their rights, stipulated that plaintiff was a joint owner of real estate in this particular township, albeit his taxes were delinquent in the years 1957 and 1958. We believe the court was clearly acting within its discretionary powers in requesting the additional testimony and that the stipulation is sufficient to establish plaintiff's interest in the subject of the lawsuit, justifying his prosecuting it on behalf of the town. Schultz v. Krosch, 204 Minn. 585, 588, 284 N. W. 782, 784. Even if plaintiff's taxes were delinquent they would, of course, be a lien on his property, reducing its value, and we believe these circumstances are sufficient to give him a standing in court.

■ While there is authority recognizing that in some situations action taken by public officials on the advice of counsel insulates them from exposure to personal liability, this is not such a case. State ex rel. Pope v. Germania Bank, 106 Minn. 164, 118 N. W. 683, relied on by defendants, was a case where a receiver, who permitted claims against stockholders to lapse, was held not liable when his inaction stemmed from reliance on his attorney's advice. That was a negligence claim, and in contrast to the instant case the receiver's duties were governed by an obscure and doubtful doctrine of law. In Burns v. Essling, 163 Minn. 57, 62, 203 N. W. 605, 607, also cited by defendants, we said by way of dictum:

"When the validity of a claim is in doubt; or the right to make an appropriation is uncertain; or the language of the charter is ambiguous and their action is taken on the advice of counsel, there is reason for exempting city officials from personal liability."

In the matter before us, however, there is no ambiguity to construe, and defendants had no right to rely on advice which patently, even to a layman, was inconsistent with the clear language of the statute.

■ The defendants also claim that this action is barred by laches, citing Oliver Iron Min. Co. v. Independent School Dist. No. 35, 155 Minn. 400, 193 N. W. 949. The record does not show when plaintiff

first learned of the irregularities claimed. The action was brought within the time permitted by the statute of limitations, and we find nothing in the evidence which required the trial court to hold as a matter of law that plaintiff was guilty of an unwarranted delay in commencing these proceedings. Pugnier v. Ramharter, 275 Wis. 70, 81 N. W. (2d) 38, 71 A. L. R. (2d) 522.

■ Plaintiff's claim against the defendant town supervisors, Art Salo, Heino Maki, and Tony Gradisher, Jr., is based on their executing contracts in 1951 on behalf of the town of Balkan for the purchase of snowplow equipment and snow fencing. The trial court held that the contracts for this equipment were invalid because they were not let to the low bidders and entered judgment against the town supervisors for the full amounts paid. It is significant that in so holding the trial court found the treasurers were not liable because the contracts involved the exercise of discretion by the town board.

In 1951 the town of Balkan advertised for bids with a view to purchasing a snowplow for delivery by October 15 of that year. Two bids were received—one from the Ziegler Company, in the sum of $1,151, and the other from Road Machinery & Supplies Company for $1,273, the latter selling what was known as a "Ross" plow. Although the Ziegler plow met all of the specifications, the board purchased the Ross plow at a cost which was $122 higher. The plaintiff claims, and the court found, that the purchase was invalid, and that the town was entitled to restitution of the full amount paid by virtue of § 365.37 requiring all purchases of over $500 to be made from the "lowest responsible bidder." Section 365.37 provides:

"* * * Every contract made and payment voted or made contrary to the provisions of this section shall be void * * *."

The supervisors testified that the reason for accepting the higher bid was because the Ross plow was a heavier machine and was interchangeable with a plow the town already owned. It appears that the plows were operated by two trucks of the same make and that the supervisors felt it would be of greater utility to have interchangeable parts. They testified that this particular plow would not have to be made adaptable to existing vehicles and could be attached with the

expenditure of very little time and money, which was a substantial advantage over the Ziegler plow. The supervisors stressed the importance of keeping unimproved roads open for school buses, for mail and milk deliveries, and to permit employees to reach their jobs during the winter months. There was one other factor which prompted the town board's decision. The purchase was made during the Korean war when equipment was difficult to get and deliveries uncertain. The board was able to secure prompt delivery of the Ross machine in the summer and this to some extent influenced their decision. There was no dispute but that the snowplow purchased was worth the price paid, even though it was the more expensive of the two.

A similar situation existed with respect to the purchase of snow fence. Two bids were submitted—one from Lampert Lumber Company in the sum of $1,574, and one from Northern Fence Company in the sum of $1,454. The town supervisors accepted the higher bid because they preferred doing business with a local dealer who could give them prompt delivery. It appears that the contract was entered in the fall. There was some urgency about getting the fence in the ground before it froze. In addition, samples of the Lampert fence were available while those of the low bidder were not. There was testimony that the fence was worth the price paid, and again the only issue was whether the contract was void as not representing the low bid.

The trial court found both contracts in violation of § 365.37 and entered judgment for the full amount of each contract against defendant town supervisors. In its memorandum the court rejected the reasons advanced by the town for accepting the higher bids as failing to justify the exercise of their discretion.

We have consistently stressed the necessity for strictly enforcing the law governing competitive bidding. Diamond v. City of Mankato, 89 Minn. 48, 93 N. W. 911, 61 L. R. A. 448; Coller v. City of St. Paul, 223 Minn. 376, 26 N. W. (2d) 835; Griswold v. County of Ramsey, 242 Minn. 529, 65 N. W. (2d) 647. Nevertheless, without retreating from the position taken in our earlier cases, we have recognized the necessity for according public officials some latitude in purchasing items on which bids are required. In Otter Tail Power

Co. v. Village of Elbow Lake, 234 Minn. 419, 424, 49 N. W. (2d) 197, 201, 27 A. L. R. (2d) 906, 913, we held that:

"* * * where bids are received on items of equipment which are not capable of precise or exact specifications, a municipality may exercise a reasonable discretion in determining who is the lowest responsible bidder and, in so doing, may consider, in addition to the bid price, the quality, suitability, and adaptability of the article to be purchased for the use for which it is intended. In so doing, the discretion exercised must be reasonable and must be based upon some substantial difference in quality or adaptability. To hold otherwise would compel a municipality to purchase an article of less value for its use simply because the price was lower. Value is not always determined by price alone. Here, the court has found that the village accepted the lowest responsible bid, and we believe that there is ample evidence to sustain that finding; consequently, that it must stand."

We reached the same conclusion in Duffy v. Village of Princeton, 240 Minn. 9, 60 N. W. (2d) 27. Applying the principles of the cases cited, we are of the opinion that under all of the circumstances the town board was justified in accepting the higher bids and that the contracts are therefore valid. With respect to the purchase of the snowplow, the fact it was a sturdier machine, the utility of having interchangeable equipment, and the availability of the plow at a time when it was in short supply during the Korean war of 1951, in our opinion were sufficiently cogent reasons for paying a slightly higher price. The same principle applies with somewhat less force to the purchase of the snow fence. The availability of the fencing at a time when the cold weather was closing in, the failure of the low bidder to furnish samples, and the fact the war made delivery uncertain, seem to us under the circumstances to warrant the exercise of the board's discretion in accepting the higher bid. However, we might well have reached a different conclusion had these transactions occurred under ordinary conditions, during normal times, when purchases could be made in an orderly way on a competitive basis with reasonable assurance of prompt delivery. Under all of the circumstances, we believe the contracts for the purchase of the snowplow

and the fencing were valid and hold that the order for judgments against defendants Salo, Maki, and Gradisher must therefore be reversed.

Reversed and remanded.

MR. JUSTICE ROGOSHESKE, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.