**MINNESOTA CHAPTER OF ASSOCIATED BUILDERS AND CONTRACTORS, INC., a Minnesota corporation; Gartner Refrigeration Company, a Minnesota corporation; and Richard S. Luck and Edlin L. Gaalswyk, individually, Plaintiffs,**

v.

**The COUNTY OF ST. LOUIS; and St. Louis County Board of Commissioners, Defendants.**

**Civ. No. 5–93–85.**

United States District Court, D. Minnesota, Fourth Division.

June 29, 1993.

Robert James Huber, Gregg John Cavanagh, Sheri Lynn Kasper, Leonard Street & Deinard, Minneapolis, MN, for plaintiffs.

Michael Robert Dean, St. Louis Cty. Atty., Duluth, MN, for defendants.

Steven Wayne Schneider, William Dale Watters, Halverson Watters Bye Downs

Reyelts & Bateman, Duluth, MN, for intervenor-defendant.

## MEMORANDUM OPINION AND ORDER

### DIANA E. MURPHY, Chief Judge.

Minnesota Chapter of Associated Builders and Contractors, Inc. (MNABC), Gartner Refrigeration Company (Gartner), Richard S. Luck and Edlin L. Gaalswyk brought this action against the County of St. Louis (County) and the St. Louis County Board of Commissioners (Board). Plaintiffs allege that an addendum to a bid solicitation on a project to construct a county jail is preempted by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, and that the addendum violates Minn.Stat. 375.21, the equal protection and due process clauses of the Constitution, and 42 U.S.C. § 1983. Plaintiffs seek declaratory and injunctive relief, and attorney fees. They now move for preliminary injunctive relief.

### I.

MNABC is a trade association representing approximately two hundred construction contractors. Gartner is a Minnesota corporation which provides air conditioning, refrigeration, and temperature control services for buildings, and bids on commercial construction projects. Richard S. Luck is the Vice President and 50% shareholder of Gartner, and Edlin L. Gaalswyk is one of its employees. Both Luck and Gaalswyk are residents and taxpayers in St. Louis County.

In the mid 1980s the Minnesota Department of Corrections (MNDOC) began annually to cite the St. Louis County jail for building code violations, life safety and fire code violations, and noncompliance with contemporary jail standards. As a result of these citations, the county and MNDOC entered into a Limited Use Agreement in August 1986. This agreement permitted the jail to operate at a reduced capacity and imposed other limitations. MNDOC has imposed additional restrictions on the use of the jail in each succeeding year.

Because of these restrictions, the county has had to house inmates at the facilities of neighboring counties. Since September 1991, the county has paid $139,862 for inmate housing outside of the county. In 1992, the county spent approximately $12,000 to transport inmates to and from other county facilities. The *per diem* cost for housing inmates is rising rapidly, and the cost in the next year of housing inmates outside of the county could be as high as $250,000.

The Limited Use Agreement also required the county to upgrade the jail or to construct a new one, and the county investigated and planned a new facility in the intervening years. The county ultimately arrived at a project which consists of 52 separate bid packages. The estimated cost of the project is $12,937,053, assuming the bid opening would take place on June 23, 1993.

On May 14, 1993, the county solicited bids for contracts to construct the new St. Louis County Jail in Duluth, Minnesota. The original bid specification required contractors to pay the prevailing wage rate. Bids were to be opened on June 16, 1993 at 2:00 p.m.

On June 7, 1993, the Board issued Addendum No. 1 to the bid specification. This addendum changed the bid opening time to Wednesday, June 23, 1993 at 2:00 p.m. The addendum also added Paragraph 14 to the Information and Instructions for Bidders. This paragraph requires that contracts be awarded to the lowest responsible bidder, in accordance with Minn.Stat. § 471.345, and defines a responsible bidder as one:

"demonstrably possessing the skill, ability, and integrity necessary to timely and faithfully perform the work called for by the contract, provide competent workmanship and financial soundness and who meets the requirements of applicable law, and who shall furnish labor that can work in harmony with all other elements of labor employed or to be employed on the project."

Paragraph 14 also requires that each bidder "as a condition of being awarded a contract or subcontract, shall agree to execute the Project Labor Agreement." By executing the Project Labor Agreement the contractor agrees to recognize Duluth Building and Construction Trades Council "as the sole and exclusive bargaining representative of all craft employees..." on the project. The

Project Labor Agreement guarantees against any strike, picketing, work stoppages, slowdowns or other disruptive activity, and contains an arbitration provision to resolve disputes. By executing the Project Labor Agreement the contractor also agrees "to install the basic hourly wage rates, fringe benefits, hours and working conditions as have been duly negotiated with the Unions listed in Schedule hereto attached and are contained in the Local Duluth Area Collective Bargaining Agreements..." According to plaintiffs, the Local Duluth Area Collective Bargaining Agreements require payments to union trust funds and participation in particular apprenticeship programs.

When the complaint was filed, Gartner had not submitted a bid. It maintained that it had intended to submit a bid, and would submit a bid if it were not required to enter the Project Labor Agreement. Gartner has a medical plan, a retirement plan, and on-the-job training for employees. According to Gartner, adopting the collectively bargained wage and benefit packages would require it to charge considerably more than it now charges.

One hour prior to the deadline for closure on Wednesday, June 23, 1993, Gartner did submit a bid, but indicated that the bid was submitted under protest. The county received a total of five separate bids, including Gartner's, on the temperature control bid, Bid No. 2682, Bid Packing No. 48. The bids have not been opened because of an order entered by the court on agreement of the parties.

The county contends that the critical phase of construction must be completed within three months of the scheduled bid award date. This phase includes excavation of six thousand cubic yards of material and the placement of 19,000 yards of engineered fill. The one week delay already incurred as a result of the filing of the instant motion has resulted in additional costs of $19,000. A delay of more than 45 days will cost the county $985,000 if it could go forward with the project this season, or $731,000 if it decided to go forward with the project next year.

The project will be financed by a bond issue, which is scheduled for sale on August 17, 1993. The bond interest cost on that date is projected to be 5.5%, which is a very low rate. For every .5% that interest rates increase during any period of delay, the cost to the county of the project will increase an additional $700,000.

Plaintiffs filed their complaint on Friday, June 18, 1993, and the motion for a temporary restraining order was filed at 5:00 p.m. the same day. Plaintiffs sought to enjoin the June 23, 1993 bid opening, unless the county accepted bids regardless of whether the bidder was signatory to the Project Labor Agreement. On June 22, 1993, by agreement of the parties and order of the court, the bid opening was stayed until Wednesday, June 30, 1993 at 2:00 p.m. Hearing was set for Friday, June 25, 1993 at 11 a.m. At the hearing, the parties indicated that the motion should be considered as a motion for a preliminary injunction.[1]

## II.

Whether a preliminary injunction should issue involves consideration of:

1. the threat of irreparable harm to the movant;

2. the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant;

3. the probability that movant will succeed on the merits;

4. the public interest.

*Dataphase Sys. Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir.1981) (en banc). No single factor is determinative. *Modern Computer Sys., Inc. v. Modern Banking Sys, Inc.*, 871 F.2d 734, 738 (8th Cir.1989) (en

---

1. The Duluth Building and Construction Trades Council (union) has moved to intervene as a defendant. Plaintiffs oppose intervention. The union submitted a memorandum in support of its motion and a memorandum in opposition to plaintiffs' motion for preliminary injunctive relief. Although the court has not ruled on the motion for intervention, it reviewed the union's memorandum in opposition prior to the hearing and allowed it to state its position on preliminary injunctive relief at oral argument.

banc). Absence of a finding of irreparable injury, however, is sufficient grounds for denying a preliminary injunction. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir.1987).

### A.

■ Plaintiffs argue that Gartner and other unspecified members of MNABC will be irreparably harmed without intervention by the court because they will be effectively precluded from bidding on the project. They argue that the individual taxpayers are harmed by having to pay more for the project because of the addendum to the bid specification. The county responds that the harm to plaintiffs is speculative.

Gartner has now submitted a bid, but there is nothing to indicate that it would be the lowest responsible bid. Gartner is unlike the plaintiff in *Glenwood Bridge, Inc. v. Minneapolis*, 940 F.2d 367 (8th Cir.1991). In *Glenwood Bridge*, the plaintiff had submitted a bid which had proved to be the low bid. Defendant subsequently rejected all bids, and readvertised the project. The plaintiff in *Glenwood Bridge* could accordingly show some concrete harm to him by the readvertisement of the project. Gartner's allegations of harm are speculative at this point. Gartner could be harmed if it submitted the lowest responsible bid, if its bid were rejected, and if the rejection of the bid were ultimately determined to be unlawful. Even if this occurred, damages would be an available remedy.

The taxpayer plaintiffs assert that they will be harmed if the county pays more for the project by proceeding with the requirement that contractors agree to execute the Project Labor Agreement. There has been no showing that this requirement will increase the cost of the project, however. Every contractor will be required to pay the prevailing wage rate whether or not it is ultimately bound by the Project Labor Agreement. Plaintiffs have not shown that the requirement that contractors agree to execute the Project Labor Agreement will increase the cost of labor on the project above the prevailing wage rate.

The showing of harm to any of the plaintiffs in the absence of injunctive relief is slight.

### B.

■ Plaintiffs argue that the project is not time sensitive and that the county already delayed the bid opening by issuing the addendum. They also argue that there can be no harm in requiring the county to abide by the law although they do not present any evidence to show lack of harm. Plaintiffs also maintain that any harm to the county can be minimized by expediting a final hearing on the merits.

The county has presented evidence that it now operates an unsafe jail at less than full capacity, and that it undergoes continuing costs to house inmates outside of the county. It has presented affidavits which state that the cost for the next year could be as high as $250,000. The additional construction costs for a six week delay are estimated to be $985,000. These increased costs result from the additional expenses occurred with the onset of winter. This estimate is exclusive of additional costs for architectural services. Rebidding the project for next year would cost the county approximately $765,000. Any .5% increase in the interest rates for municipal bonds would cost the county an additional $700,000.

There can be no guarantee that this case would proceed to final disposition before the county experienced additional costs due to delay. Although plaintiffs' counsel maintained at the hearing that the record is now substantially complete, it also appears that counsel was unaware until just before the hearing that Gartner had submitted a bid on June 23, 1993. It is not clear that the matter will be soon ready for trial even if there were time available on the calendar. Furthermore, delay resulting from any appeal cannot be estimated. An injunction restraining the county from opening the bids would likely cause substantial delay on the project, and such delay would cause economic harm to the county and put off the time when it could operate a safe jail. The county has shown it would suffer significant countervailing harm if an injunction is issued.

### C.

#### 1. *ERISA Preemption*

Plaintiffs argue that ERISA preempts the requirements of the bid specification because the Project Labor Agreement specifies particular benefits that must be paid. Plaintiffs argue that any state action which relates to an ERISA plan is preempted. The county argues that ERISA preemption applies to generally enacted laws, but not to activities of the state where the state acts purely as a proprietor. The union argues that the addendum to the bid specification is not a state law within the meaning of 29 U.S.C. § 1144(c). It also argues that ERISA preemption would impair the operation of sections 8(e) and (f) of the National Labor Relations Act, and that 29 U.S.C. § 1144(d) saves the bid specification from ERISA preemption.

ERISA preempts "any and all state laws so far as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). State laws include "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c). The definition of state laws excludes state action which does not have the effect of law, and ERISA therefore does not preempt state action which relates to an ERISA plan so long as the state action does not have the effect of law. This distinction indicates that where the state merely acts as any private party might act, instead of in areas where it exercises law-making or law enforcement authority, ERISA preemption does not come into play.

The bid specification applies to a discrete project. It is not a generally applicable law or regulation. It does not even apply to every project done in the county. Any private party could insist that contractors on a construction project enter into a similar prehire agreement to protect against work stoppages. This proprietary action of the county does not appear to be a "state law" within the meaning of 29 U.S.C. § 1144(c)(1), and therefore plaintiffs likelihood of prevailing on their preemption argument under 29 U.S.C. § 1144(a) is not good.

The conclusion that the prehire agreement is not preempted finds support in *Building & Constr. Trades Council v. Associated Builders & Contractors, Inc.,* —— U.S. ——, 113 S.Ct. 1190, 122 L.Ed.2d 565 (1993), in which a unanimous Court held that the National Labor Relations Act did not preempt a prehire agreement between the state and a union on a state-funded construction project:

> To the extent that a private purchaser may choose a contractor based upon that contractor's willingness to enter into a prehire agreement, a public entity *as purchaser* should be permitted to do the same. Confronted with such a purchaser, those contractors who do not normally enter such agreements are faced with a choice. They may either alter their usual mode of operation to secure the business opportunity at hand, or seek business from purchasers whose perceived needs do not include a project labor agreement. In the absence of any express or implied indication by Congress that a State may not manage its own property when it pursues its purely proprietary interests, and where analogous private conduct would be permitted, this Court will not infer such a restriction.

ERISA does not provide any express or implied indication that a state may not act as a private party would be permitted to with respect to its property. To the contrary, ERISA's definition of state law preserves this distinction by only including state action that has the effect of law.

*Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), does not require a different result. In *Ingersoll–Rand,* the court concluded that a state cause of action which had significant effect on ERISA plans was preempted. A cause of action is created by a state, and enforceable through the courts. It is unlike the proprietary business conduct of the county with respect to the construction of a new facility. The other cases cited by plaintiff also involve state laws of general application, and are therefore inapposite. *See e.g. General Elec. Co. v. New York State Dept. of Labor,* 891 F.2d 25 (2d Cir.1989) (ERISA preempted portions of the New York prevailing wage statute); *Hydrostorage, Inc. v.*

*Northern California Boilermakers Local Joint Apprenticeship Committee,* 891 F.2d 719 (9th Cir.1989) (administrative regulation requiring employer to participate in apprenticeship programs on public works projects preempted by ERISA).

ERISA does not appear to preempt the requirements of the bid specification on this isolated project.

### 2. *Minn.Stat. 375.21*

■ Minn.Stat. § 375.21 provides in part: "Every contract shall be awarded to the lowest responsible bidder ..." Plaintiffs argue that this statute permits the county to impose only requirements which are necessary to the project and which do not unduly restrict bidding. According to plaintiffs, the requirement that contractors sign the Project Labor Agreement is unduly restrictive and unreasonable. The county argues that the Project Labor Agreement insures it against work stoppages and lock outs, and that it has an interest in guaranteeing that the project continue in an orderly fashion without interruption.

The county is afforded some discretion in determining the lowest responsible bidder. The Minnesota Supreme Court has "recognized the necessity for according public officials some latitude in purchasing items on which bids are required." *Leskinen v. Pucelj,* 262 Minn. 461, 115 N.W.2d 346, 352 (1962). There are factors to consider other than price in determining the lowest responsible bidder. "Value is not always determined by the price alone." *Id.* 115 N.W.2d at 353 (*quoting Otter Tail Power Co. v. Village of Elbow Lake,* 234 Minn. 419, 424, 49 N.W.2d 197, 201 (1951)).

The county has an interest in avoiding delays resulting from labor difficulties, and the Project Labor Agreement is a rational way to address this interest. Furthermore, there is no evidence before the court that the project would cost less without the requirement that contractors sign the Project Labor Agreement. Contractors presumably would have to pay the prevailing wage with or without the labor agreement, so the cost to the state might not prove to be more as a result the Project Labor Agreement. It might be that the avoidance of delays guaranteed by the Project Labor Agreement would ultimately save county money. There is no evidence to support or foreclose any of these eventualities. The purpose of competitive bidding is to give the state the best bargain for the least money. *See Griswold v. Ramsey County,* 242 Minn. 529, 65 N.W.2d 647 (1954). There has been no sufficient showing that the bid specification was unreasonable or that it deprives the county of a better bargain.

Plaintiffs have not shown a likelihood of success on the merits on the claim under Minn.Stat. § 375.21.

### 3. *Equal Protection and Due Process*

■ Plaintiffs argue that the requirement to enter into the Project Labor Agreement violates the equal protection and due process clauses of the United States and Minnesota Constitutions. Plaintiffs do not allege that they belong to any protected class, and contractors who have not entered into a Project Management Agreement do not belong to a protected class. *See Hoke Co. v. Tennessee Valley Authority,* 854 F.2d 820, 828 (6th Cir.1988). Furthermore, the interest of the county in protecting against disruption and delay is reasonably related to the requirement that contractors enter into the Project Labor Agreement. *See Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

The complaint alleges a violation of substantive due process. Plaintiffs have not alleged a denial of any fundamental right, and the law is valid if it is rationally related to a legitimate governmental purpose. *Scott v. City of Sioux City, Iowa,* 736 F.2d 1207 (8th Cir.1984). The county had a legitimate interest in protecting against labor disruptions on the construction of the jail.

For these reasons the likelihood of success on the merits of the constitutional claims is poor.

### D.

Plaintiffs argue that there is a strong public policy against a legislative requirement that public contracts be let only to union

employers. The bid specification, however, does not preclude non-union labor. It merely requires that any bidder, whether union or non-union, enter into the Project Labor Agreement. The Supreme Court recently held that a state may do just that in its proprietary contracts. *Building Constr. & Trades Council v. Associated Builders & Contractors, Inc.*, — U.S. —, 113 S.Ct. 1190, 122 L.Ed.2d 565 (1993).

The public has an interest in having a functioning jail, which meets the MNDOC standards, built in St. Louis County. The bidders who have complied with the bid specification have an interest in having the bid process continue. Finally, the public interest accords with the interest of the county in avoiding the costs that any further delays would cause. The public interest weighs against granting preliminary injunctive relief.

### III.

The showing of harm to the plaintiffs is not strong, but the county would suffer substantial harm if it were enjoined from opening bids. Plaintiffs have not shown a likelihood that they will succeed on the merits,[2] and the public interest weighs against granting an injunction. The motion for preliminary injunctive relief should be denied.

### ORDER

Accordingly, based upon the above, and all the files, records, and proceedings herein, IT IS HEREBY ORDERED that:

1. Plaintiffs' motion for preliminary injunctive relief is denied;

2. The parties shall submit memoranda by Wednesday, July 14, 1993 on whether there is federal jurisdiction over this case. Briefs in response shall be submitted by Monday, July 19, 1993.

---

2. Analysis of the preemption arguments and the constitutional claims suggests federal jurisdiction may be lacking so it is appropriate to provide the parties with an opportunity to address the issue of jurisdiction.