[620 NYS2d 855]

In the Matter of NEW YORK STATE CHAPTER, INC., ASSOCIATED
GENERAL CONTRACTORS OF AMERICA et al., Respondents, v
NEW YORK STATE THRUWAY AUTHORITY et al., Appellants.

Third Department, December 22, 1994

## APPEARANCES OF COUNSEL

*G. Oliver Koppel, Attorney-General,* New York City *(Bond, Schoeneck & King,* Syracuse *[Robert W. Kopp]* of counsel), for appellants.

*Colleran, O'Hara & Mills,* Garden City *(John F. Mills, Edward J. Groarke* and *Carol L. O'Rourke* of counsel), for Local 40, appellant-intervenor.

*Mudge, Rose, Guthrie, Alexander & Ferdon,* New York City *(Paul G. Burns* and *Regina Scinta* of counsel), for Allied Building Metal Industries, appellant-intervenor.

*Plunkett & Jaffe, P. C.,* Albany *(Louis R. Tomson* of counsel), for New York State Building & Construction Trades Council, appellant-intervenor.

*Bryant, O'Dell & Basso,* Syracuse *(Robert H. Basso* and *Vic J. Kopnitsky* of counsel), for respondents.

## OPINION OF THE COURT

CASEY, J.

At issue on this appeal is whether respondent State Thruway Authority can, as part of the competitive bidding process on a public construction project, impose a specification which requires the successful bidder to agree to abide by the provisions of a project labor agreement (hereinafter PLA) negotiated and executed by the project construction manager and the various labor unions that have jurisdiction over the work to be done during the project. Supreme Court held that the use of the PLA violates the competitive bidding provision of Public Authorities Law § 359 because it discourages competition by deterring nonunion bidders and fosters favoritism by dispensing advantages to unions and union contractors. The record establishes that the use of the PLA at issue in this case neither precludes nonunion contractors from bidding on the project nor requires the use of only union employees, and the Thruway Authority had a rational basis for concluding that the use of the PLA promotes the public interest that the competitive bidding statutes are designed to protect. We hold, therefore, that the use of the PLA in this case is a valid bid specification which does not violate the competitive bidding requirement of Public Authorities Law § 359.

The relevant project involves the refurbishment of the Thruway Authority's Tappan Zee Bridge and, according to the Thruway Authority, is the largest such construction project in size, complexity and cost since the bridge was constructed. Of the 23 major construction projects on the bridge since it was built, the successful bidder in 20 of those projects was a union contractor. Based upon the size of the current project and its prior experience on other projects, the Thruway Authority

concluded that the likely successful bidder would be a union contractor, which would subject the work to the jurisdiction of some 19 local unions with separate labor contracts having different starting times, scheduling restrictions, holidays, grievance resolution procedures, and other terms and conditions of employment. The Thruway Authority also found that each of the labor contracts was scheduled to expire at some time during the term of the bridge construction project. In addition, one of the prior bridge projects in which a nonunion contractor was the successful bidder had resulted in a labor dispute which, according to respondents, caused delays and added administrative costs. Based upon its prior experience and due to concerns for potential labor relations problems and for potential problems associated with scheduling, the Thruway Authority hired a consultant to investigate the matter and to recommend the best means to achieve the efficient, safe and timely completion of the project.

The Thruway Authority thereafter directed its consultant to negotiate with the various trade unions having jurisdiction over the work to be performed during the project and to seek concessions from all the unions concerning work rules and other terms and conditions. The result of the consultant's efforts was the PLA which, *inter alia,* creates uniform procedures for dealing with all disputes, contains a comprehensive no-strike clause, establishes a standardized work week, permits flexibility in scheduling, and contains other provisions which, according to the Thruway Authority, standardize the terms and conditions of employment and will reduce the cost of the project. The PLA requires that employees be hired through union halls, except that contractors and subcontractors are permitted to retain up to 12% of their current work force. Union halls are expressly prohibited under the PLA from discriminating in the referral process against prospective employees based upon their union membership or lack thereof. The PLA also specifically recognizes that the successful bidder need not be a union contractor and that the unions will comply with the terms of the PLA regardless of whether the successful bidder is a union or nonunion contractor. The Thruway Authority approved the PLA and included in the project's specifications the requirement that the successful bidder and all subcontractors comply with the terms of the PLA.

 Our analysis begins with petitioners' claim that the use of the PLA effectively created a "union only" qualification or

precondition. The courts have struck down qualifications or preconditions imposed on prospective bidders for reasons other than the public policy fostered by the competitive bidding statutes *(see, e.g., Associated Bldrs. & Contrs. v City of Rochester,* 67 NY2d 854). There is no evidence in the record, however, to demonstrate that the PLA requirement limits prospective bidders to union contractors only. An officer of one of petitioners, a nonunion contractor, alleges that the PLA bars his company from submitting a bid, but he offers no explanation or reason for his conclusion. The PLA is specifically made applicable regardless of whether the successful bidder is a union or nonunion contractor. In view of this provision, there is no support for petitioners' claim that the PLA excludes nonunion contractors. Nor is there any support for the theory that the PLA creates a precondition which requires "union only" labor. The PLA requires only that, with certain exceptions, at least 88% of a contractor's employees be hired through referrals from the union hall that has jurisdiction over the particular trade, and that all employees pay the equivalent of union dues. Discrimination against nonunion employees in the referral process is prohibited, and employees who are hired are not required to join the union. In addition to permitting contractors to hire a core of their current employees without using union hall referrals, the PLA also recognizes the right of the contractors to determine the competency of the employees referred by the union hall, to select the employees to be laid off, and to use any other source of employees if a union hall referral is not made within 48 hours.

■ Assuming that the use of the PLA somehow discourages competition in the bidding process, we conclude that the purpose of Public Authorities Law § 359 and this State's other bidding statutes is not to foster competition merely for the sake of having unfettered competition. Rather, the competitive bidding required by the statutes is a means of achieving the more basic purpose of obtaining the best work at the lowest possible price while guarding against favoritism, improvidence, extravagance, fraud and corruption *(see, Jered Contr. Corp. v New York City Tr. Auth.,* 22 NY2d 187, 192-193). The statutes are not intended to benefit the bidders and should be construed and administered with sole reference to the public interest *(supra,* at 193). Thus, specifications for public projects are not illegal merely because they tend to favor one manufacturer or contractor over another, but "an objectionable and

invalidating element is introduced when specifications are drawn to the advantage of one manufacturer not for any reason in the public interest but, rather, to insure the award of the contract to that particular manufacturer" *(Gerzof v Sweeney,* 16 NY2d 206, 211). To justify specifications which favor one manufacturer or contractor over another, it must be shown that the specifications are based upon the public interest promoted by the competitive bidding statutes, not just any public interest *(compare, Varsity Tr. v Saporita,* 71 AD2d 643, *affd* 48 NY2d 767, *with American Inst. for Imported Steel v Office of Gen. Servs.,* 47 AD2d 118, *affd* 38 NY2d 991).

We conclude that the Thruway Authority's decision to use the PLA at issue in this case is rationally based upon reasons in the public interest promoted by the competitive bidding statutes. In *Building & Constr. Trades Council v Associated Bldrs. & Contrs.* (507 US —, 113 S Ct 1190) the United States Supreme Court recognized that regardless of whether the purchaser of contracting services is a public or private entity, PLAs have a valid purpose in accommodating conditions specific to the construction industry, including the short-term nature of employment which makes post-hire collective bargaining difficult and the contractor's need for predictable costs and a steady supply of skilled labor. Accommodation of these conditions clearly advances the goal of the competitive bidding statutes to obtain the best work at the lowest possible price. Equally as important, the affidavit of the Thruway Authority's Executive Director, the internal Thruway Authority memorandum recommending approval of the PLA, the Thruway Authority's report on a labor analysis and the preamble to the PLA establish that most of the detailed reasons for using the PLA in this particular project relate to the efficient, safe and timely completion of the project and are, therefore, consistent with competitive bidding statutes' goal of obtaining the lowest responsible bidder. At the same time, use of the PLA is consistent with the statutes' goal of guarding against favoritism, improvidence, extravagance, fraud and corruption because the PLA applies regardless of whether the successful bidder is a union or nonunion contractor, and discrimination against employees on the basis of their union membership or lack thereof is prohibited.

In contrast to the evidence submitted by the Thruway Authority concerning the justification for its use of the PLA, petitioners submitted no evidence to show that the Thruway Authority's use of the PLA was to insure the award of the

contract to a particular contractor or to exclude a particular contractor or class of contractors. Nor have petitioners demonstrated that use of the PLA will have that effect. We conclude, therefore, that the Thruway Authority's requirement that the successful bidder comply with the terms of the PLA is a valid specification which does not violate the policy embodied in the relevant competitive bidding statute.

We emphasize that our holding is not a blanket approval of PLAs in all public construction projects. Rather, we hold only that this State's competitive bidding statutes do not create a per se prohibition of PLAs in public construction projects, and that the Thruway Authority had a rational basis for concluding that the particular PLA at issue in this case was justified by reasons which are consistent with the public interest promoted by the competitive bidding statutes. Having so concluded, we need not consider the preemption arguments raised by the parties. We also note that the case relied upon by Supreme Court (Harms Constr. Co. v New Jersey Turnpike Auth., 137 NJ 8, 644 A2d 76) involved the application of New Jersey competitive bidding statutes to a PLA which apparently had substantially different terms than the PLA at issue here and was not the result of the type of thorough investigation, analysis and justification used by the Thruway Authority in this case.

Petitioners also claim that certain provisions of the PLA violate certain provisions of the State Constitution and Labor Law. We conclude that the status of the various petitioners, including a potential contractor-bidder, associations which represent potential contractor-bidders and a taxpayer, does not give them standing to assert the violation of constitutional and statutory provisions which are designed to protect the rights of employees (cf., Matter of Axelrod v Sobol, 78 NY2d 112, 115).

For the reasons previously set forth, petitioners have failed to demonstrate any entitlement to CPLR article 78 relief. Accordingly, the petition must be dismissed insofar as it seeks such relief. The petition also seeks declaratory relief and, therefore, we will make a declaration concerning the application of the relevant competitive bidding statute to the Thruway Authority's actions challenged by petitioners.

MIKOLL, J. P., MERCURE, CREW III and YESAWICH JR., JJ., concur.

Ordered that the judgment is reversed, on the law, without costs, that portion of the petition which seeks CPLR article 78 relief is dismissed and it is declared that the actions of respondent State Thruway Authority regarding the project labor agreement do not violate Public Authorities Law § 359.