[No. A067604. First Dist., Div. Five. Aug. 2, 1995.]

ASSOCIATED BUILDERS AND CONTRACTORS, GOLDEN GATE CHAPTER, INC., et al., Plaintiffs and Appellants, v.
CONTRA COSTA WATER DISTRICT, Defendant and Respondent;
CONTRA COSTA BUILDING AND CONSTRUCTION TRADES COUNCIL, AFL-CIO, Real Party in Interest and Respondent.

**COUNSEL**

Mark R. Thierman for Plaintiffs and Appellants.

Bold, Polisner, Maddow, Nelson & Judson, Jeffrey D. Polisner, Robert B. Maddow, Carl P. A. Nelson and Thomas N. Stewart III for Defendant and Respondent.

Van Bourg, Weinberg, Roger & Rosenfeld, Victor J. Van Bourg, Sandra Rae Benson and Theodore Franklin for Real Party in Interest and Respondent.

## OPINION

**PETERSON, P. J.**—In this case, we hold that Contra Costa Water District (District), a county water district[1] formed under Water Code section 30000 et seq., and expressly authorized by statute (Wat. Code, § 31483) to issue revenue bonds under the Revenue Bond Law of 1941 (Gov. Code, § 54300 et seq.) to finance *construction* of facilities for the storage, transmission, distribution, or treatment of water for beneficial use, is not required to contract for such construction with a lowest qualified responsible bidder (lowest bidder).

The District solicited bids for *construction* of a $450 million water system, reservoir, and pipeline project (project). That solicitation limited bidding to those contractors which would accept a project labor agreement (PLA) included in the contract documents negotiated between the District and the Contra Costa Building and Construction Trades Council, AFL-CIO (Union).[2] The PLA, in essence, provided that only contractors and subcontractors bound to hire union labor would be eligible to bid or contract for construction of the project.

---

[1] At oral argument, appellants conceded, as the District contended, that the District is *not* a water storage district, retracting a contrary claim made in their reply brief. Appellants also abandoned the position that Water Code section 31501, dealing with projects financed by the Improvement Act of 1911 (Sts. & Hy. Code, § 5000 et seq.), imposed a low bid requirement on the construction project in this appeal. "Section 9100" of the Water Code, on which appellants relied, inter alia, in their briefing, is nonexistent.

[2] "A [PLA] covering the [project] has been negotiated between the [Union] and the District. The successful Bidder and all tiers of its subcontractors shall execute an agreement to be bound by the terms and conditions of this Agreement. The Draft Project Labor Agreement is included in the Contract Documents. [¶] Pursuant to provisions of the Labor Code Section 1770, et. seq., of the State of California, the Director of the Department of Industrial Relations has ascertained the prevailing rate of per diem wages of the locality in which the [project] is to be performed and applicable to the [project] to be done. The successful Bidder shall pay not less than the prevailing rate. Copies of these wage determinations are on file with the District and will be made available to any interested party on request. [¶] Bidders shall promptly notify the District, in writing, about all classifications of labor not listed in the prevailing wage determinations but necessary for the performance of the [project], before bids are submitted. [¶] If wage rates have been negotiated which exceed the prevailing rates filed with the California Department of Industrial Relations, the higher rate shall apply to the

■ Associated Builders and Contractors, Golden Gate Chapter, Inc., and Bay Area Black Contractors, Inc., appellants herein, whose standing in the action was accepted by the lower court, seek a declaration that the PLA violates California law requiring the District to accept project bids, in an open bidding process, from the lowest bidder. Appellants contend the PLA unlawfully allows the District to reject such lowest bidder in favor of a higher bidder simply because the lowest bidder is unwilling to be a party to a union contract and elects to perform its contract work with a non-union work force.

We must reject appellants' contentions because no statutory authority cited by appellants or otherwise, in the narrow circumstances of this case, requires a county water district to award contracts or approve the award of subcontracts to the lowest bidder, where the contract is one for construction of a project financed under the provisions of the Revenue Bond Law of 1941.

## I. Facts and Procedural History

The relevant facts are not in dispute. The District is constructing a large water system reservoir and pipeline project, the Los Vaqueros project, which is calculated to cost roughly $450 million to complete. The District formally solicited bids for the project from construction companies in early July 1994.

A District officer suggested, inter alia, that the PLA would generate for the District political "support from an important constituency-organized labor," and would enable the project to proceed to timely conclusion uninterrupted by any potential labor strife. The District thereafter included in the contract bidding procedures, and in the contract itself, the PLA clause. Some months later, a contract containing the PLA was in fact signed. The PLA prevented firms that would not agree to hire union labor from bidding on the project. Non-Union bidders would be required to discharge their current non-union workers and hire union replacements.

Appellants sought a writ of mandate invalidating the PLA clause of the contract. The trial court denied the petition and entered judgment against appellants, from which they timely appealed.

## II. Discussion

■ In order to avoid favoritism, corruption, and waste of public funds, the Public Contract Code specifically requires most large public works to be

[project]. [¶ No allowance will be made for any unfavorable requirement which might have been unforeseen from a thorough examination of the [PLA] by the Contractor."

awarded pursuant to an open bidding process, in which the public agency is required to accept the lowest bid from a responsible bidder. As the Fourth District noted in *Konica Business Machines U.S.A., Inc.* v. *Regents of University of California* (1988) 206 Cal.App.3d 449, 456-457 [253 Cal.Rptr. 591]: "The purpose of requiring governmental entities to open the contracts process to public bidding is to eliminate favoritism, fraud and corruption; avoid misuse of public funds; and stimulate advantageous market place competition. [Citations.] Because of the potential for abuse arising from deviations from strict adherence to standards which promote these public benefits, the letting of public contracts universally receives close judicial scrutiny and contracts awarded without strict compliance with bidding requirements will be set aside. . . . The importance of maintaining integrity in government and the ease with which policy goals underlying the requirement for open competitive bidding may be surreptitiously undercut, mandate strict compliance with bidding requirements. [Citation.]"

These observations mirror those of our Supreme Court in *Miller* v. *McKinnon* (1942) 20 Cal.2d 83, 88 [124 P.2d 34, 140 A.L.R. 570]: "The competitive bidding requirement is founded upon a salutary public policy declared by the [L]egislature to protect the taxpayers from fraud, corruption, and carelessness on the part of public officials and the waste and dissipation of public funds."

Our own court (Division Five), per Justice Haning, has also recognized the importance of these same interests in *Boydston* v. *Napa Sanitation Dist.* (1990) 222 Cal.App.3d 1362, 1368 [272 Cal.Rptr. 458], where we required a local public service agency to award a contract to the lowest responsible bidder, in order "that the taxpayers receive the most for their money and that awards are made without favoritism, fraud or corruption."

 The Public Contract Code is replete with requirements that public agencies comply with the open bidding procedure for contracts above a stated minimum amount, and accept the bid from the lowest bidder. However, appellants cite no sections of the Public Contract Code which are relevant here. Sections 20584 and 20585 of the Public Contract Code, on which they withdrew their reliance at oral argument, require county water *storage* districts, but not this county water district, to comply with open bidding and lowest bidder requirements. California Water Code section 31483 specifically gives this District authority to finance its projects by bonds issued pursuant to the Revenue Bond Law of 1941. That act only requires that the "operation or management" of an enterprise must be awarded to the lowest bidder (Gov. Code, §§ 54516.1, 54516.2); the contract

at issue here is for a project's construction, not for its operation or management. The latter section is, thus, inapplicable.[3]

Appellants suggest Public Contract Code section 3400, which provides that the guidelines for public works projects not be limited to "any one specific concern," prevents imposition of a PLA clause on construction of all projects by public agencies, because that clause limits the bidding to firms willing to employ a union work force. However, here the bidding was not limited to any single construction firm or other sole source of construction services. Any responsible bidder could bid, provided it was willing to employ a union work force. In sum, no existing statute requires the District to accept the lowest bid for *construction* of a project financed by means of bonds issued under the provisions of the Revenue Bond Law of 1941.

Some anomaly may exist in the award of a public project worth many millions in taxpayer funds to other than the lowest bidder. However, county water districts, such as the District here, are not made subject to any explicit statutory low bidding requirements otherwise applicable to some other public agencies, or to such requirements applicable to water storage districts. In sum, the Legislature has not enacted an explicit requirement that public funds raised through the sale of revenue bonds by authority of the Revenue Bond Law of 1941, and entrusted to county water districts, are subject to a lowest bidder requirement in the circumstances of this case. Unless that legislative action is taken, we are precluded from imposing such a requirement in this case in light of our Supreme Court's observation that minimum bidding laws must be strictly construed, and may not be extended beyond the specific provisions enacted by the Legislature. (See *Domar Electric, Inc.* v. *City of Los Angeles* (1994) 9 Cal.4th 161, 173 [36 Cal.Rptr.2d 521, 885 P.2d 934].)

Finally, we reject appellants' contention that the District's action violated the constitutional rights of non-union bidders by denying them equal protection of the law. In an opinion which did not address the state law issues of competitive bidding requirements, and only dealt with federal law issues meriting federal appellate court review, the federal Supreme Court held that public agencies of a state are not forbidden by *federal* labor law from imposing a PLA clause in a solicitation for bids. (See *Building and Construction Trades Council* v. *Associated Builders* (1993) 507 U.S. 218 [122 L.Ed.2d 565, 113 S.Ct. 1190] (*Boston Harbor*).) State law issues arising from a competitive bidding requirement, which were not before the federal Supreme

---

[3]While we note that the District itself sought bids and represented it would accept the lowest bidder, we are not cited to any statutory requirement that it do so.

Court in *Boston Harbor*, were subsequently addressed by the New Jersey Supreme Court in *George Harms Const.* v. *Turnpike Auth.* (1994) 137 N.J. 8, 38-45 [644 A.2d 76, 92-95] *(Harms)*. *Harms* held that where a New Jersey statute imposed a low bid requirement on public works projects, a PLA clause which limited the bidding to firms with a union-affiliated workforce violated that state law. In contrast, a New York appellate court held that New York's competitive bidding statutes did not create a per se prohibition of PLA's in public construction projects. *(NYS Chapter* v. *NY State Thruway Authority* (1994) 207 A.D.2d 26 [620 N.Y.S.2d 855, 857-858]; *General Bldg. Contractors* v. *Dormitory Auth.* (1994) 210 A.D.2d 788 [620 N.Y.S.2d 859, 860]; see also *Minn. Chapter of Assoc. Builders* v. *St. Louis Cty.* (D.Minn. 1993) 825 F.Supp. 238, 244.)

However, we do not reach the issue of whether in this state a statutory low bid requirement proscribes a PLA clause in the context of this case, because the District is *not* subject to a California law requiring competitive bidding. Thus, neither federal or state laws, nor the federal or state Constitutions, precluded the District's imposition of a PLA clause here, regardless of its claimed anticompetitive effect.

III. DISPOSITION

The judgment is affirmed.

King, J., and Haning, J., concurred.

On August 29, 1995, the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied November 2, 1995. Kennard, J., and Arabian, J., were of the opinion that the petition should be granted.