[No. E011476. Fourth Dist., Div. Two. Jan. 25, 1993.]

CITY OF ONTARIO, Petitioner, v.
THE SUPERIOR COURT OF SAN BERNARDINO COUNTY,
Respondent;
THE PEOPLE ex rel. DEPARTMENT OF TRANSPORTATION, Real
Party in Interest.

**COUNSEL**

Lynberg & Watkins, and Stephen M. Harber for Petitioner.

No appearance for Respondent.

William M. McMillan, Anthony J. Ruffolo, Robert W. Vidor, Larry R. Danielson and Joseph Vanderhorst for Real Party in Interest.

**OPINION**

**McKINSTER, J.**—In this case, which appears to be one of first impression, we are called upon to determine whether the State of California's (State) demand for equitable indemnity against the City of Ontario (City) is barred by the State's failure to precede its lawsuit by the filing of a claim pursuant to the Government Tort Claims Act. (Gov. Code, § 810 et seq.)[1] The State argues that section 905, subdivision (i), specifically exempts claims by the

---

[1]All subsequent statutory references are to the Government Code unless otherwise noted.

State from the general requirements. The City responds that section 935 permits it to override this exemption by enactment, and that it has in fact done so. We agree with the City, and find that the trial court erred in overruling its demurrer to the State's complaint.

The factual and procedural background of the matter may be quickly recited. On January 16, 1991, the State filed a complaint for indemnity against the City, alleging that third party plaintiffs had recovered a judgment against the State based on flood damage, and that it had paid the judgment on February 20, 1990. The State further alleged that the damages suffered by the plaintiffs in that action were due in whole or in part to acts or omissions of defendant City.

The City successfully demurred to this original complaint, which included causes of action sounding in nuisance and inverse condemnation, and alleged a dangerous condition of public property. (See § 835.) The State then filed a first amended complaint which set forth one simple cause of action for equitable indemnity.

The City again demurred, arguing that the State's demand was barred because it had not filed a claim. In addition, the City argued that the complaint was barred by the statute of limitations in that the State's claim had accrued no later than May 11, 1984.[2] The State responded by asserting that it was not subject to the claims filing procedures, and the trial court evidently agreed. The City promptly sought extraordinary relief, asking this court to direct the trial court to sustain its demurrer without leave to amend. We issued an alternative writ of mandate and set the matter for hearing.

## DISCUSSION

First, we find that extraordinary review is appropriate. We do not routinely afford plenary review to orders with respect to pleadings. (See

[2]The origin of this date is not clear. According to the demurrer, the third parties filed their action against the State on December 21, 1983, and the State responded "shortly thereafter." The City relied on section 901, which provides that a cause of action for equitable indemnity against a public entity accrues when the complaint giving rise to the claim for indemnity is served upon the party later seeking such indemnity. The State relied on the rule that, outside the purview of the claims statutes, a cause of action for indemnity accrues when the indemnitee actually pays a judgment or settlement to a third party. (See *Valley Circle Estates* v. *VTN Consolidated, Inc.* (1983) 33 Cal.3d 604, 611 [189 Cal.Rptr. 871, 659 P.2d 1160].)

As we hold that the State's action is in fact subject to the claims requirements established by the City, this point is moot. It appears self-evident, however, that if the claims procedures do not apply, the special Tort Claims Act provision with respect to accrual would not apply. We observe that section 901 expressly covers "the purpose of computing the time limits prescribed by Sections 911.2, 911.4, 912, and 945.6 . . . ." It does not purport to change general law.

*Babb* v. *Superior Court* (1971) 3 Cal.3d 841, 850-851 [92 Cal.Rptr. 179, 479 P.2d 379].) In this case, however, the issue is one of substantial legal importance. (*Ibid.*) If the City's position is correct, the entire case will be disposed of without the expense and delay of trial. In the circumstances, the availability of an eventual remedy by appeal from an unfavorable judgment is not adequate. (See *Tyco Industries, Inc.* v. *Superior Court* (1985) 164 Cal.App.3d 148, 153-154 [211 Cal.Rptr. 540].)

■ The general rule under the Tort Claims Act is that any party with a claim for money or damages against a public entity must first file a claim directly with that entity; only if that claim is denied or rejected may the claimant file a lawsuit. (§§ 905, 945.4; *Fisher* v. *Pickens* (1990) 225 Cal.App.3d 708, 718 [275 Cal.Rptr. 487].)[3] Section 905, enacted in 1963 and not amended since that time,[4] both states the rule and creates a number of exceptions to it. It lists 12 categories of claims which are exempt from the filing requirement, including tax claims, claims by public employees for wages, pension claims, claims for principal or interest upon bonds, and claims under the Pedestrian Mall Act of 1960. Pertinent here is subdivision (i), which similarly exempts "Claims by the State or by a state department or agency or by another public entity."

Thus, under section 905, the State's claim against the City could be pressed directly through litigation, without the precedent filing of a claim. The same is true of the other categories of claims described in that statute.

However, section 935 specifically empowers local public entities to establish their own policies and procedures for the presentation of those claims against them which are excepted by section 905. "Claims against a local public entity for money or damages which are excepted by Section 905 from Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910) of this part, and which are not governed by any other statutes or regulations expressly relating thereto, shall be governed by the procedure prescribed in any charter, ordinance, or regulation adopted by the local public entity." The statute then expressly permits the local public entity to establish a claim requirement, so long as the procedures are similar to, and not more restrictive than, those established by the Tort Claims Act with respect to claims not exempted by section 905.

---

[3]The most commonly litigated exception concerns the claimant who fails to file a claim within the statutory period, is refused leave by the public entity to file a late claim, and seeks judicial relief from the requirements upon a showing of valid excuse or incapacity. (§§ 911.4, 911.6; § 946.6.)

[4]Both sections 905 and 935 were previously contained in the Government Code as sections 703 and 730, respectively. They obtained their current numbers at the time the California Tort Claims Act was adopted in 1963.

In connection with its demurrer to the amended complaint, the City presented a copy of Ordinance No. 3-2.02, which expressly refers to the authority granted by section 935.[5] The ordinance provides in part that "[p]ursuant to the authority contained in Section 935 of the Government Code of the State, the following claims procedures are established for those claims against the City for money or damages not now governed by State or local laws." Subdivision (a) deals with employee claims; subdivision (b), governing "contract and other claims," reads in part ". . . notwithstanding the exemptions set forth in Section 905 of the Government Code of the State, all claims against the City for damages or money, when a procedure for processing such claims is not otherwise provided by State or local laws, shall be presented within the time limitations and in the manner prescribed by Sections 910 through 915.2 of the Government Code of the State. *Such claims shall further be subject to the provisions of Section 945.4 of the Government Code of the State relating to the prohibition of suits in the absence of the presentation of claims and action thereon by the Council.*" (Italics supplied.)

 The clear intent and effect of this ordinance is to take advantage of the power granted by section 935, and to make claims otherwise exempted by section 905 subject to the City's claims procedures (which happen to be based on those applicable to all claims not exempted by section 905). As the State's claim against the City is exempted by section 905, it seems plain, at first blush, that the ordinance requires the State to present a claim as a prerequisite to filing suit.

The State does not seriously contest this facial reading of the ordinance, but takes the position that section 935 simply does not authorize a local public entity to compel the State to submit to any claims procedure.

 We begin by agreeing with the State that municipal liability for torts is a matter of state concern, and thus may not be regulated by local ordinances inconsistent with state law as established by the Tort Claims Act. (*Societa per Azioni de Navigazione Italia* v. *City of Los Angeles* (1982) 31

---

[5]The City requested that the court take judicial notice of the ordinance. While the record does not reflect a ruling on the point, it is apparent that such notice was in fact taken. Although usually confined to the face of the pleadings, a demurrer may be supported by any matter of which the court may take judicial notice. (Code Civ. Proc., § 430.30, subd. (a).) County ordinances may be judicially noticed under Evidence Code section 452, subdivision (b) ("[r]egulations and legislative enactments issued by or under the authority of the United States or any public entity in the United States"). (*Longshore* v. *County of Ventura* (1979) 25 Cal.3d 14, 24 [157 Cal.Rptr. 706, 598 P.2d 866]; *Long Beach Equities, Inc.* v. *County of Ventura* (1991) 231 Cal.App.3d 1016, 1024 [282 Cal.Rptr. 877].) We also take judicial notice of the ordinance as contained in the record.

Cal.3d 446, 463 [183 Cal.Rptr. 51, 645 P.2d 102].) ▮▮▮ However, this begs the question; the City is not attempting to enact inconsistent legislation, but is merely exercising the authority affirmatively granted to it by the State in section 935.

We also have no quarrel with the proposition that the City could not impose regulations upon the State which contradicted or exceeded those to which the State consented to subject itself. Thus, in *Hall* v. *City of Taft* (1956) 47 Cal.2d 177 [302 P.2d 574], the court prohibited a city from enforcing its building code against a contractor retained by the State to construct a building on State property, for State use. The court ruled that "[w]hen it engages in such sovereign activities as the construction and maintenance of its buildings, as differentiated from enacting laws for the conduct of the public at large, it is not subject to local regulations unless the Constitution says it is or the Legislature has consented to such regulation." (*Id.*, at p. 183.) If section 905 stood alone, with its provision that the State was not required to file a claim as a prerequisite to filing suit against a local public entity, certainly the City could not bind the State to compliance with whatever conditions and requirements it chose to impose upon claimants.

But, of course, section 905 does not stand alone; it is modified by section 935. In our view section 935 *does* constitute express consent to the imposition of the specified requirements.

As the City points out, the latter section's effect has been recognized in the context of other categories of claims which otherwise would be exempted by section 905. In *Calvao* v. *Superior Court* (1988) 201 Cal.App.3d 921, 922-923 [247 Cal.Rptr. 470], the court held that an employee's claim for wages, exempted by section 905, was subject to defendant county's claims requirement as enacted pursuant to section 935; similar is *Pasadena Hotel Development Venture* v. *City of Pasadena* (1981) 119 Cal.App.3d 412, 414-415 [174 Cal.Rptr. 52], involving a claim for a tax refund.

However, the State insists nevertheless that section 935 does not apply to claims by the State exempted by section 905, subdivision (i). Insofar as the State relies on the position that the basic purpose of section 935 was to allow local public entities to prescribe claims procedures for miscellaneous claims, but to do so within a consistent framework, we do not disagree. But when the State leaps from this point to the conclusion that section 935 applies only selectively to the exemptions in section 905, we decline to follow.

The State argues that the legislation was accompanied by a Law Revision Commission report or recommendation, which discussed the necessity of

exempting certain "types" of claims from the operation of the Tort Claims Act. It interprets this comment as recognizing the difference in "type" between the contract and tort claims routinely covered by the act, and the less easily described claims which were eventually exempted by section 905. Further, it reasons that section 935 was then intended to permit local public entities to reinstate claims requirements *only* for these miscellaneous "types" of claims.

The State's position, as we understand it, is this. Section 905 is *primarily* concerned with "types" of claims, in the sense that it governs procedures for claims based on miscellaneous legal theories not directly covered by the Tort Claims Act. On the other hand, subdivision (i), exempting "claims by the State" (as well as by other local public entities), includes *all* claims by a particular claimant, whether otherwise covered by the Tort Claims Act or not. Thus, in the State's view, subdivision (i) is *sui generis* within the statute, and "claims by the State" are not to be lumped in with the other "types" of claims when the effect of section 935 is considered.

 It is one of the best-established and most sensible rules of the law that courts should not imaginatively construe—or meddlesomely fiddle with —statutes which are clearly written. If "language is . . . clear and unambiguous, there is no need for construction." (*In re Lance W.* (1985) 37 Cal.3d 873, 886 [210 Cal.Rptr. 631, 694 P.2d 744].) Still more recently the Supreme Court has warned that "[i]n construing the terms of a statute we resort to the legislative history of the measure only if its terms are ambiguous."[6] (*Title Ins. & Trust Co.* v. *County of Riverside* (1989) 48 Cal.3d 84, 96 [255 Cal.Rptr. 670, 767 P.2d 1148].)

In *Courtesy Ambulance Service* v. *Superior Court* (1992) 8 Cal.App.4th 1504 [11 Cal.Rptr.2d 161], this court rejected the argument of the State Compensation Insurance Fund that Insurance Code section 11873, which exempted the fund from the provisions of the Government Code except as specifically noted, did not make inapplicable to the fund section 818's general exemption from punitive damages. We held that the plain language of the statutes compelled a result unfavorable to the fund despite the assertion that the Fund, which sponsored the underlying legislation, could not possibly have intended such a consequence. Similarly, although the State now argues that it meant to exempt itself absolutely from any claim requirement, we find this case also an appropriate one for the application of the "plain meaning" rule.

 Sections 905 and 935, read together, are perfectly clear. Section 905 creates exemptions from the state-mandated claims procedure; section 935

---

[6]In fact, as noted below, we do not find the legislative history either particularly illuminating or contrary to the construction we adopt.

permits local public entities to enact their own procedures to cover the exempted claims. Section 935, by its terms, covers *all* "[c]laims against a local public entity for money or damages which are excepted by Section 905 . . . ." It does not incorporate any suggestion whatsoever that it does not apply to claims by the State.

Subdivision (i) exempts not only claims by the State but also those by local public entities and it has been assumed by the commentators that a local public entity may bind other public entities to the claims provisions it establishes pursuant to section 935. (See Cal. Government Tort Liability Practice (Cont.Ed.Bar 1992) § 6.24, pp. 662-665.) Prior to the enactment of the Tort Claims Act and the exemption of section 935, it was also assumed that the State was required to follow the general claims requirements when seeking to press a demand against a local public entity. (See *State Dept. of Pub. Health* v. *Imperial* (1944) 67 Cal.App.2d 244 [153 P.2d 957].) The only reasonable construction of sections 905 and 935 is that this result is permissible when a local public entity exercises the power granted by the latter statute.

We must assume that the Legislature knew how to create an exception if it wished to do so; nothing would have been simpler than to insert into the first paragraph of section 935 the proviso that "nothing in this section shall apply to those claims by the State or by a state department or agency." It did not do so, and the State is now asking us to engage in the most extreme form of judicial rewriting of the statutes.

██ We are aware that, in applying the "plain meaning" rule, "[l]iteral construction should not prevail if it is contrary to the legislative intent apparent in the statute." (*Lungren* v. *Deukmeijian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) However, we are unable to discern any particular intent that claims by the State should be absolutely and unalterably unaffected by any claims procedures established by a local public entity. This is not a case in which an overly technical parsing of one poorly worded phrase reaches a result which is contrary to the obvious overall meaning of the statute; there is simply nothing in the language of either section 905 or 935 from which we can reach the conclusion desired by the State.

Nor is the result in any way antithetical to the general thrust and purpose of the Tort Claims Act. ██ The purpose of requiring the filing of claims, and of prescribing limited time frames in which such claims may be filed, is to give the public entity the opportunity to investigate the facts while the evidence is fresh, as well as to settle meritorious cases without the need of litigation. (*Powell* v. *City of Long Beach* (1985) 172 Cal.App.3d 105, 111

[218 Cal.Rptr. 97]; *Tyus* v. *City of Los Angeles* (1977) 74 Cal.App.3d 667, 672 [141 Cal.Rptr. 630].) Furthermore, the prompt presentation of a claim for money permits the recipient public entity to make appropriate fiscal planning decisions. (*San Diego Unified Port Dist.* v. *Superior Court* (1988) 197 Cal.App.3d 843, 847 [243 Cal.Rptr. 163].) ■■■ We are unable to see how these beneficial goals would be served by permitting the State to spring demands upon local public entities without following the claims procedures, or how they would be hampered if the State is compelled to join with all other claimants in submitting timely notification of its demands under the local ordinance.

We hold that the State is subject to the claims requirements established by the City, and that its failure to comply with those requirements bars it from proceeding in court on its claim for indemnification.

The alternative writ, having served its purpose, is discharged. Let a peremptory writ of mandate issue directing the superior court to vacate its order overruling the City's demurrer, and to enter a new order sustaining the demurrer without leave to amend.

Hollenhorst, Acting P. J., and McDaniel, J.,* concurred.

---

*Retired Associate Justice of the Court of Appeal, Fourth District, senior judge status (Gov. Code, § 75028.1), sitting under assignment by the Chairperson of the Judicial Council.