[No. A063655. First Dist., Div. Four. July 12, 1994.]

DEL NORTE DISPOSAL, INC., et al., Plaintiffs and Appellants, v. DEPARTMENT OF CORRECTIONS et al., Defendants and Respondents.

1010

COUNSEL

Howard, Rice, Nemerovski, Canady, Robertson, Falk & Rabkin, Todd E. Thompson, Richard A. Marcantonio, Cochran & Follett and William H. Follett for Plaintiffs and Appellants.

Daniel E. Lungren, Attorney General, Henry G. Ullerich, Acting Assistant Attorney General, Jose R. Guerrero and Kim M. Settles, Deputy Attorneys General, Harland Law Firm, Geri Anne Johnson and Christine Doehle for Defendants and Respondents.

## OPINION

**REARDON, J.**—Plaintiffs and appellants Del Norte Disposal, Inc., and Del Norte Solid Waste Management Authority appeal from an order denying their motion for a preliminary injunction in an action to compel defendants and respondents State of California Department of Corrections and Eel River Disposal Co. to cancel a contract for solid waste disposal. In the contract Eel River Disposal agrees to "furnish all labor, materials, supplies, equipment, and transportation necessary to provide solid waste (wet and dry) and sewage plant collection and disposal service for Pelican Bay State Prison . . . ."

The trial court denied a preliminary injunction on the ground appellants "have made no sufficient showing of irreparable harm and . . . are not likely to prevail on the merits."

Appellants contend that they are likely to prevail on the merits because under the local ordinances governing the place where Pelican Bay State Prison (prison) is located, Del Norte Disposal has the exclusive franchise for solid waste disposal. Respondents contend that the prison is exempt from those ordinances because it is a state agency engaging in sovereign activity. Respondents' contention has merit.

The undisputed relevant facts are that at all material times, by the appropriate legal procedures, appellant Del Norte Disposal had an exclusive franchise for collection and disposal of solid waste in the area covered by appellant authority. The prison is located in such area. Respondent State Department of Corrections, which operates the prison as a department of the state government (Pen. Code, §§ 5050-5054), solicited bids for collection and disposal of solid waste at the prison. Respondent Eel River Disposal and appellant Del Norte Disposal each submitted bids. Del Norte's bid was

$255,446.88; Eel River's was $197,071.99. The contract was awarded to Eel River because its bid was the lowest by $58,374.89.[1]

"Ordinarily an appeal from the granting of a preliminary injunction involves a very limited review of the trial court's exercise of discretion concerning two factors: (1) the likelihood that plaintiffs will ultimately prevail and (2) the interim harm plaintiffs will sustain if the preliminary injunction is denied compared to the interim harm defendant will suffer if the injunction is granted pending a final determination of the merits. [Citations.] . . . [¶] . . . If . . . a question of pure law is presented, it can sometimes be determinative over the other factor, for example, when the defendant shows that the plaintiff's interpretation is wrong as a matter of law and thus the plaintiff has no possibility of success on the merits. [Citations.]" (*Hunter* v. *City of Whittier* (1989) 209 Cal.App.3d 588, 595-596 [257 Cal.Rptr. 559].)

The basic rules governing the relationship between state facilities and local regulations are set out in *Hall* v. *City of Taft* (1956) 47 Cal.2d 177 [302 P.2d 574], where the Supreme Court held that public schools were not subject to the building regulations of the municipality in which the school was sited. ■ The basis of the holding was that: "When [the state] engages in such sovereign activities as the construction and maintenance of its buildings, as differentiated from enacting laws for the conduct of the public at large, it is not subject to local regulations unless the Constitution says it is or the Legislature has consented to such regulation." (*Id.*, at p. 183.)

At the time of the *Hall* case, article XI, section 11 of the California Constitution provided that a local government "may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws." (Cal. Const., former art. XI, § 11; *Hall* v. *City of Taft*, *supra*, 47 Cal.2d at p. 179, unnumbered footnote.) In language which is slightly altered in an unimportant manner, the provision now appears as article XI, section 7 of the California Constitution.

Regarding such provision and other extant laws governing schools and municipal powers, the high court declared in *Hall*: "While a large degree of autonomy is granted to school districts by the Legislature, we are referred to no statute or constitutional provision which, as far as the question here

---

[1]Section 1203 of the State Administrative Manual specifically and properly provides that state agencies make expenditures wisely and economically so as to ensure and protect the best interests of the state.

involved is concerned, expressly makes school buildings or their construction any more amenable to regulation by a municipal corporation than structures which are built and maintained by the state generally for its use. . . . Section 11 of article XI of the state Constitution . . . should not be considered as conferring such powers on local government agencies. Nor should the Government Code sections which confer on a city the power to regulate the construction of buildings within its limits [citations] be so considered." (*Hall* v. *City of Taft, supra,* 47 Cal.2d at pp. 182-183.)

Citing *Hall, City of Santa Ana* v. *Board of Education* (1967) 255 Cal.App.2d 178 [62 Cal.Rptr. 863] held that a school system was not subject to the garbage collection regulations of the city wherein the schools were located.

█ Because the "state's immunity from local regulations is merely an extension of the concept of sovereign immunity" (*Board of Trustees* v. *City of Los Angeles* (1975) 49 Cal.App.3d 45, 49 [122 Cal.Rptr. 361]), the consent to waive the immunity must be stated in "express words" (*City of Los Angeles* v. *City of San Fernando* (1975) 14 Cal.3d 199, 276 [123 Cal.Rptr. 1, 537 P.2d 1250]) in a statute (*City of Orange* v. *Valenti* (1974) 37 Cal.App.3d 240, 245 [112 Cal.Rptr. 379]).

Some examples of effective express waiver are: (1) a statute which provides that certain state agencies "shall comply" with the building and zoning ordinances of cities and counties in which they are situated (Gov. Code, §§ 53090, 53091; *City of Lafayette* v. *East Bay Mun. Utility Dist.* (1993) 16 Cal.App.4th 1005, 1013 and fn. 4 [20 Cal.Rptr.2d 658]; *County of Los Angeles* v. *City of Los Angeles* (1963) 212 Cal.App.2d 160, 166-167 and fn. 5 [28 Cal.Rptr. 32]); (2) a statutory scheme which authorizes local public entities to enact rules subjecting the state to claim filing requirements (Gov. Code, §§ 905, 935; *City of Ontario* v. *Superior Court* (1993) 12 Cal.App.4th 894 [16 Cal.Rptr.2d 32]); and (3) a statute which provides that every "person" must obtain a permit for coastal development from the city and "person" is defined to include the state government (Pub. Resources Code, §§ 30600, subd. (a), 30111; *Coastal Development Permit,* 65 Ops.Cal.Atty.Gen. 88, 91 (1982)).

Solid waste collection and disposal is covered in the California Integrated Waste Management Act of 1989 (the Act). (Pub. Resources Code, §§ 40000, 40050 et seq.)[2] █ Appellants contend that this Act constitutes consent by the state to local regulation of state facilities in the area of solid waste handling and management. They rely upon the following sections of the Act:

---

[2]All further section references are to the Public Resources Code.

Section 40001, subdivision (a): "The Legislature declares that the responsibility for solid waste management is a shared responsibility between the state and local governments."

Section 40002: "[T]he Legislature declares that it is in the public interest for the state, as sovereign, to authorize and require local agencies, as subdivisions of the state, to make adequate provision for solid waste handling, both within their respective jurisdictions and in response to regional needs consistent with the policies, standards, and requirements of this division and all regulations adopted pursuant to this division."

Section 40055, subdivision (a): "This division, or any rules or regulations adopted pursuant thereto, is not a limitation on the power of any state agency in the enforcement or administration of any provision of law which it is specifically authorized or required to enforce or administer, including, but not limited to, the exercise by the state water board or the regional water boards of any of their powers and duties pursuant to Division 7 (commencing with Section 13000) of the Water Code, the exercise by the Department of Toxic Substances Control of any of its powers and duties pursuant to Chapter 6.5 (commencing with Section 25100) of Division 20 of the Health and Safety Code, and the exercise by the State Air Resources Board or any air pollution control district or air quality management district of any of its powers and duties pursuant to Part 3 (commencing with Section 40000) of Division 26 of the Health and Safety Code."

Section 40057: "Each county, city, district, or other local governmental agency which provides solid waste handling services shall provide for those services . . . within or without the territory subject to its solid waste handling jurisdiction."

Section 40059: "(a) Notwithstanding any other provision of law, each county, city, district, or other local governmental agency may determine all of the following: [¶] (1) Aspects of solid waste handling which are of local concern, including, but not limited to, frequency of collection, means of collection and transportation, level of services, charges and fees, and nature, location, and extent of providing solid waste handling services. [¶] (2) Whether the services are to be provided by means of nonexclusive franchise, contract, license, permit, or otherwise, either with or without competitive bidding, or if, in the opinion of its governing body, the public health, safety, and well-being so require, by partially exclusive or wholly exclusive franchise, contract, license, permit, or otherwise, either with or without competitive bidding. The authority to provide solid waste handling services may be

granted under terms and conditions prescribed by the governing body of the local governmental agency by resolution or ordinance. [¶] (b) Nothing in this division modifies or abrogates in any manner either of the following: [¶] (1) Any franchise previously granted or extended by any county or other local governmental agency. [¶] (2) Any contract, license, or any permit to collect solid waste previously granted or extended by a city, county, or a city and county."

In order to determine whether these statutes expressly, or even impliedly, waive the state's immunity from local control we are guided by certain rules of statutory construction. "According to established principles, our first task is to ascertain the intent of the Legislature so as to effectuate the purpose of the law, looking first to the words of the statute themselves, giving them their usual, ordinary import, and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. [Citation.] 'When the language is susceptible of more than one reasonable interpretation, however, we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.' [Citation.]" (*City of Santa Cruz* v. *Santa Cruz City School Bd. of Education* (1989) 210 Cal.App.3d 1, 4-5 [258 Cal.Rptr. 101].)

In contrast to the clear language found to support an express waiver of the state's immunity from local regulation in the examples previously cited, there is no similar language used in the Act that explicitly grants localities control over state facilities. Indeed, the Act most closely resembles the legislation which *Hall* found did not make state property amenable to local regulation. No one section expressly transfers authority over solid waste at state facilities to local authorities. Section 40059, heavily relied on by appellants, only grants authority to local governments over matters of "local concern." (§ 40059, subd. (a).) Under existing law, state prisons are matters of state, not local, concern. Moreover, the entire statutory scheme divides the subject of waste management between state and local governments. (See *Waste Resource Technologies* v. *Department of Public Health* (1994) 23 Cal.App.4th 299, 305-307 [28 Cal.Rptr.2d 422].) Certainly, an enactment which emphasizes a divided responsibility does not transfer authority to regulate areas which have always been under exclusive state control.

Finally, as both a policy matter and as relevant to the issue of interim harm, we have been presented with no compelling reason why or how the local entity is harmed or prejudiced, or its efforts at solid waste management

somehow compromised, by Eel River's performance under a contract with the prison that results in a savings to taxpayers of nearly $60,000 a year.

## DISPOSITION

The order is affirmed.

Anderson, P. J., and Perley, J., concurred.

Appellants' petition for review by the Supreme Court was denied October 27, 1994.