[No. D019887. Fourth Dist., Div. One. Mar. 13, 1996.]

LAIDLAW WASTE SYSTEMS, INC., Plaintiff and Appellant, v. BAY CITIES SERVICES, INC., Defendant and Respondent.

COUNSEL

Post, Kirby, Noonan & Sweat, Charles T. Hoge and Terri A. Perez for Plaintiff and Appellant.

Anton N. Handal and Laurie L. Largent for Defendant and Respondent.

Lloyd M. Harmon, Jr., County Counsel, Diane Bardsley, Chief Deputy County Counsel, and William Dean Smith, Deputy County Counsel, as Amici Curiae on behalf of Defendant and Respondent.

OPINION

KREMER, P. J.—In this appeal we are asked to decide whether school districts within the City of Chula Vista (the City) are bound to honor an exclusive franchise for trash hauling awarded by the City to plaintiff Laidlaw Waste Systems, Inc. (Laidlaw). We conclude the school districts, as state agencies, are immune from the City's trash collection regulations and are therefore free to independently contract with other trash haulers pursuant to the competitive bidding provisions of Public Contract Code section 20111.

FACTUAL AND PROCEDURAL BACKGROUND

Laidlaw and defendant Bay Cities Services, Inc. (Bay Cities) submitted the issue presented in this appeal to the trial court for decision based on stipulated facts, including the following.

The City is a "chartered" city within the meaning of California Constitution article XI, and is authorized to make and enforce all laws with respect to municipal affairs subject only to the express limitations contained it its charter.

In August 1982, the City awarded Laidlaw an exclusive franchise for hauling trash in the City. The Chula Vista Elementary School District has 25 locations and the Sweetwater Union High School District (Sweetwater) has 13 locations in the City.

In September 1989, Laidlaw agreed with the City to allow a competitor, Edco Disposal Corporation (Edco),[1] to provide trash hauling services to four Sweetwater locations under an existing contract between Sweetwater and Edco. In April 1990, the Chula Vista Elementary School District opened bids for a trash collection contract, and awarded the contract to Bay Cities in December 1991. Thereafter, Bay Cities and the Chula Vista Elementary School District entered into negotiations with the City for an exception to Laidlaw's exclusive franchise. The negotiations were unsuccessful.

In July 1992, the City issued cease-and-desist orders to Bay Cities and Edco, whose franchise exception had expired. On August 10, 1992, Bay Cities began providing trash hauling services to the Chula Vista Elementary School District locations at the latter's request, despite protests from the City and Laidlaw. On August 13, 1992, Laidlaw filed the instant action seeking injunctive and declaratory relief and damages. After Edco withdrew from servicing the Sweetwater locations in the City on June 30, 1993, Bay Cities was awarded a contract to haul trash at 11 Sweetwater locations in the City.

Laidlaw and Bay Cities stipulated that Laidlaw was a proper party plaintiff, and that the school districts were not necessary parties. The parties further stipulated to withdraw, without prejudice, all claims in the action except their claims for declaratory and injunctive relief.[2] In the concluding paragraph of their stipulated facts, the parties agreed "the matter would proceed principally with the trial of the legal issue whether the schools are bound by the authority of the Chula Vista City Council to honor the exclusive franchise awarded to LAIDLAW; or conversely, whether the schools are free to independently put trash service out to bid for haulers not approved by the City Council to haul at school locations."

---

[1]Edco was a named defendant and cross-complainant in the instant action. However, before trial, Edco and Laidlaw reached a settlement, pursuant to which they stipulated to declaratory relief as between them to the effect that any exclusive franchise either has in San Diego County for hauling trash "shall be deemed to lawfully include service at all federal, state, city, county, and other public agency locations (including, without limitation, school districts), located within the city limits or other applicable jurisdiction for each such city or municipality for which either Laidlaw or EDCO has an exclusive franchise; unless the city or municipality expressly limits or excludes such public agencies from the franchise by ordinance or resolution."

[2]Laidlaw's complaint and Bay Cities's cross-complaint both sought damages for interference with contract.

After hearing oral argument on the legal issue presented for trial, the court ruled in favor of Bay Cities, and judgment was entered accordingly.[3]

DISCUSSION

I. *Standard of Review*

■ Because the issue presented in this case is a question of law based on undisputed facts, the standard of review on appeal is independent or de novo review. (*People* v. *Louis* (1986) 42 Cal.3d 969, 985 [232 Cal.Rptr. 110, 728 P.2d 180]; *McMillin-BCED/Miramar Ranch North* v. *County of San Diego* (1995) 31 Cal.App.4th 545, 553 [37 Cal.Rptr.2d 472].)

II. *Immunity of School Districts From Local Waste Management Ordinances*

■ We begin our discussion by noting that "[s]chool districts are agencies of the state for the local operation of the state school system. [Citations.]" (*Hall* v. *City of Taft* (1956) 47 Cal.2d 177, 181 [302 P.2d 574].) "The Legislature's power over the public school system has been described as exclusive, plenary, absolute, entire, and comprehensive, subject only to constitutional constraints. . . . The Legislature has the power to create, abolish, divide, merge, or alter the boundaries of school districts. . . . The state is the beneficial owner of all school properties and local districts hold title as trustee for the state. . . . School moneys belong to the state and the apportionment of funds to a school district does not give the district a proprietary interest in the funds. . . ." (*Hayes* v. *Commission on State Mandates* (1992) 11 Cal.App.4th 1564, 1579, fn. 5 [15 Cal.Rptr.2d 547].) Accordingly, "[t]he public schools of this state are a matter of statewide rather than local or municipal concern . . . ." (*Hall* v. *City of Taft, supra,* 47 Cal.2d at p. 179.)

State agencies, including school districts, enjoy immunity from local regulation unless the state, through statute or provision of the California Constitution, has consented to waive such immunity. (*Del Norte Disposal, Inc.* v. *Department of Corrections* (1994) 26 Cal.App.4th 1009, 1012-1013 [31 Cal.Rptr.2d 746].) The *Del Norte* court noted, "Because the 'state's immunity from local regulations is merely an extension of the concept of sovereign immunity' [citation], the consent to waive the immunity must be stated in 'express words' [citation] in a statute [citation]." (*Id.* at p. 1013.)

---

[3]As discussed, *post,* the court improperly entered a second judgment after Laidlaw filed its notice of appeal, and then issued an order vacating the first judgment it entered. Although there are significant differences between them, both judgments reflect the court's resolution of the essential issue in this case in Bay Cities's favor.

Thus, the Supreme Court in *Hall* held that when the state (acting through a school district) "engages in such sovereign activities as the construction and maintenance of its buildings, as differentiated from enacting laws for the conduct of the public at large, it is not subject to local regulations unless the Constitution says it is or the Legislature has consented to such regulation." (*Hall* v. *City of Taft, supra,* 47 Cal.2d at p. 183.) In a case more directly on point, *City of Santa Ana* v. *Board of Education* (1967) 255 Cal.App.2d 178 [62 Cal.Rptr. 863], relying on *Hall,* concluded a school district was not subject to local garbage collection regulations because neither the state Constitution nor the Legislature had consented to such regulation. (*Id.* at p. 180.)

■ Laidlaw is unable to point to any express statutory or constitutional waiver of the immunity school districts enjoy from local waste management regulations. Laidlaw contends Public Resources Code[4] section 40059 authorizes cities to issue exclusive trash hauling franchises which are binding on all local entities, and that *City of Santa Ana* would have been decided differently if section 40059 had been in effect when it was decided. We disagree.

Section 40059 is part of the California Integrated Waste Management Act of 1989 (the Act). (§§ 40000, 40050 et seq.) Section 40001, subdivision (a) provides: "The Legislature declares that the responsibility for solid waste management is a shared responsibility between the state and local governments."

Section 40059, subdivision (a) provides: "Notwithstanding any other provision of law, each county, city, district, or other local governmental agency may determine all of the following: [¶] (1) Aspects of solid waste handling which are of local concern, including, but not limited to, frequency of collection, means of collection and transportation, level of services, charges and fees, and nature, location, and extent of providing solid waste handling services. [¶] (2) Whether the services are to be provided by means of a nonexclusive franchise, contract, license, permit, or otherwise, either with or without competitive bidding, or if, in the opinion of its governing body, the public health, safety, and well-being so require, by partially exclusive or wholly exclusive franchise, contract, license, permit, or otherwise, either with or without competitive bidding. The authority to provide solid waste handling services may be granted under terms and conditions prescribed by the governing body of the local governmental agency by resolution or ordinance."

---

[4]All further statutory references are to the Public Resources Code unless otherwise specified.

*Del Norte Disposal, Inc.* v. *Department of Corrections, supra,* 26 Cal.App.4th 1009, held a state prison was exempt from local ordinances giving the plaintiff trash hauler an exclusive franchise for solid waste disposal in the area where the prison was located. *Del Norte* rejected the argument that section 40059 constitutes legislative consent to local regulation of state agencies with respect to waste management.

The *Del Norte* court noted there is no language in section 40059 or elsewhere in the Act "that explicitly grants localities control over state facilities. Indeed, the Act most closely resembles the legislation which *Hall* found did not make state property amenable to local regulation. No one section expressly transfers authority over solid waste at state facilities to local authorities. Section 40059, heavily relied on by appellants, only grants authority to local governments over matters of 'local concern.' (§ 40059, subd. (a).) Under existing law, state prisons are matters of state, not local, concern. Moreover, the entire statutory scheme divides the subject of waste management between state and local governments. [Citation.] Certainly, an enactment which emphasizes a divided responsibility does not transfer authority to regulate areas which have always been under exclusive state control." (*Del Norte Disposal, Inc.* v. *Department of Corrections, supra,* 26 Cal.App.4th at p. 1015.)

Like state prisons, the public schools of this state are a matter of state, not local concern. (*Hall* v. *City of Taft, supra,* 47 Cal.2d at p. 179.) Specifically, the state's maintenance of its buildings is a sovereign activity not subject to local regulation absent legislative or constitutional consent to local regulation. (*Id.* at p. 183.) Building maintenance necessarily includes trash collection. Accordingly, trash collection at public schools, like trash collection at state prisons, is a matter of state concern. Section 40059 only grants authority to local governments over "[a]spects of solid waste handling *which are of local concern*[.]" (§ 40059, subd. (a)(1), italics added.) Since the collection of trash at public schools is a matter of state, not local concern, it is not subject to regulation by local governments under section 40059.

Laidlaw argues *Del Norte* is distinguishable because the local government in *Del Norte,* unlike the City in the present case, was not a chartered city. Laidlaw points out that under the "home rule" doctrine set forth in article XI, section 5 of the California Constitution,[5] a chartered city's authority to enact ordinances and regulations with respect to "municipal affairs" supersedes

---

[5]Article XI, section 5, subdivision (a) of the state Constitution provides: "It shall be competent in any city charter to provide that the city governed thereunder may make and enforce all ordinances and regulations in respect to municipal affairs, subject only to the

general state law unless the Legislature has expressly excepted the subject in question from the city's "home rule" authority. Since trash collection is clearly a municipal affair under section 40059, Laidlaw contends the City's exercise of "home rule" authority over trash collection extends to state agencies located within the City, absent an express reservation by the Legislature of that power in state agencies. We disagree.

Laidlaw's "home rule" argument confuses the issues of preemption and sovereign immunity. The issue in this case is not whether the City has "home rule" authority over garbage collection within its city limits. Unquestionably, local governments have that authority, not only under section 40059, but also under case law interpreting former article XI, section 11 of the state Constitution (now article XI, section 7)[6] and decided long before the enactment of section 40059. (*City of Santa Ana* v. *Board of Education, supra*, 255 Cal.App.2d at p. 179; *Matula* v. *Superior Court* (1956) 146 Cal.App.2d 93, 98-99 [303 P.2d 871].)[7]

The issue here is not preemption; the issue is whether state agencies are exempt from local trash collection regulations under the doctrine of sovereign immunity. *Hall*, *City of Santa Ana*, and *Del Norte* make clear state agencies are indeed immune from such local regulation absent an express legislative or constitutional waiver of that immunity. Since the question is one of immunity, not preemption, it makes no difference whether the local governmental entity is a charter city as opposed to some other form of local government. The sovereign immunity of a state agency from local regulation does not depend upon the source of the local governmental entity's authority

restrictions and limitations provided in their several charters and in respect to other matters they shall be subject to general laws. City charters adopted pursuant to this Constitution shall supersede any existing charter, and with respect to municipal affairs shall supersede all laws inconsistent therewith."

[6]Former article XI, section 11 provided, "Any county, city, town, or township may make and enforce within its limits all such local, police, sanitary and other regulations as are not in conflict with general laws."

Article XI, section 7 currently provides, "A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws."

[7]*City of Santa Ana* noted that "garbage collection is peculiarly a subject of municipal control, an important purpose of municipal government [citations]." (*City of Santa Ana* v. *Board of Education, supra*, 255 Cal.App.2d at p. 179.) In *Matula* v. *Superior Court, supra*, 146 Cal.App.2d 93, 98-99, the court noted ". . . a city may, instead of collecting and disposing of garbage and rubbish itself, grant an exclusive privilege to engage in such activities [citations]. It would seem clear that cities under their police power could choose to regulate the activities of private garbage and rubbish collectors rather than engage in such activities themselves, or grant exclusive contracts to do so [citation]." Section 40059 is largely a codification of such case law.

to make regulations, it depends upon whether consent to regulation has been expressly stated by the Legislature or in the state Constitution. Neither article XI of the state Constitution nor section 40059 contains such express consent to regulation of state agencies by local government with respect to trash collection. Accordingly, state agencies are immune from such regulation. (*Hall* v. *City of Taft, supra*, 47 Cal.2d at p. 179; *Del Norte Disposal, Inc.* v. *Department of Corrections, supra*, 26 Cal.App.4th at p. 1013.)[8]

Laidlaw relies on *City of Fresno* v. *Pinedale County Water Dist.* (1986) 184 Cal.App.3d 840 [229 Cal.Rptr. 275], and *Anaheim City School Dist.* v. *County of Orange* (1985) 164 Cal.App.3d 697 [210 Cal.Rptr. 722] as authority for its position the school districts are required to honor its exclusive franchise. However, these cases are inapposite.

·In *City of Fresno*, the issue was whether the City of Fresno's annexation of a water district's territory terminated the district's authority to provide waste collection services to the annexed territory. (*City of Fresno* v. *Pinedale County Water Dist., supra*, 184 Cal.App.3d at p. 842.) Unlike the school districts in the present case, the water district in *City of Fresno* was not a state agency. Thus, the sovereign immunity of state agencies from local waste management regulation was not at issue in *City of Fresno*.

In *Anaheim*, the issue was whether a school district had to pay gate fees for its use of county solid waste disposal sites. The court held the school district was required to pay those fees because they were expressly chargeable to public entities by statute. (*Anaheim City School Dist.* v. *County of Orange, supra*, 164 Cal.App.3d at pp. 701-702.) *Anaheim* is not authority for the general proposition that school districts are subject to local waste management regulations.

Laidlaw also cites two federal cases that held federal facilities are bound by local ordinances awarding exclusive trash collection franchises. (*Parola*

[8]In its reply brief and at oral argument Laidlaw relied on *Johnson* v. *Bradley* (1992) 4 Cal.4th 389 [14 Cal.Rptr.2d 470, 841 P.2d 990], wherein the Supreme Court considered whether a local political campaign reform measure adopted by Los Angeles voters and containing provisions for public funding of election campaigns was unenforceable because it impermissibly conflicted with Proposition 73, a statewide initiative passed by California voters which, among other things, banned public financing of election campaigns. (*Id.* at p. 392.) Laidlaw contends the preemption analysis set forth in *Johnson* applies to the instant case. We disagree. The conflict (between city and state law) analysis in *Johnson* is inapplicable here because the present case does not involve a conflict between state and city law. In other words, the issue in the present case is not whether the City's waste management ordinances conflict with state law such that they are unenforceable generally; the issue is whether school districts, as state agencies, are exempt from local waste management regulations which are otherwise enforceable as matters of local concern. *Johnson*'s preemption analysis sheds no light on the sovereign immunity issue presented in the present case.

v. *Weinberger* (9th Cir. 1988) 848 F.2d 956; *Solano Garbage Co.* v. *Cheney* (E.D.Cal. 1991) 779 F.Supp. 477.) Laidlaw argues it would be anomalous to exempt state facilities from local regulations which are binding on federal facilities. *Parola* and *Solano Garbage Co.* are not persuasive authority for Laidlaw's position, as the holdings in those cases were based on a federal statute expressly requiring federal installations to comply with local arrangements for solid waste collection and disposal. (42 U.S.C. § 6961; *Parola* v. *Weinberger, supra,* 848 F.2d at pp. 960-962; *Solano Garbage Co.* v. *Cheney, supra,* 779 F.Supp. at p. 483.) There is no similar California statutory provision requiring state facilities to comply with local arrangements for solid waste collection.

We conclude by noting significant policy concerns underlying the immunity of state agencies from local waste management regulations. If school districts were bound by exclusive franchises for trash hauling awarded by local government, they would be precluded from contracting for trash hauling services through competitive bidding, to the potential detriment of the taxpayers. Thus, the immunity of school districts from exclusive franchise ordinances furthers the state's interest in avoiding waste of public funds, an important public policy underlying the requirement that public contracts be awarded through competitive bidding. (*Associated Builders & Contractors* v. *Contra Costa Water Dist.* (1995) 37 Cal.App.4th 466, 470 [43 Cal.Rptr.2d 600].)[9] In *Del Norte,* allowing the state prison to contract with the lowest bidding trash hauler rather than requiring it to comply with the local exclusive franchise ordinance saved the taxpayers nearly $60,000 a year. (*Del Norte Disposal, Inc.* v. *Department of Corrections, supra,* 26 Cal.App.4th at pp. 1012, 1016.)

Furthermore, as pointed out by the Chula Vista Elementary School District in its amicus curiae brief, subjecting school districts to local waste management ordinances and regulations would create administrative problems for school districts that operate in more than one local jurisdiction. Such a district would potentially be forced to contract with multiple trash haulers charging different prices, rather than uniformly administering trash collection at its various facilities under a single contract.

We conclude school district waste collection contracts are a matter of state rather than local concern. Therefore, school districts are not bound by

---

[9]The *Del Norte* court noted that section 1203 of the State Administrative Manual requires state agencies to "make expenditures wisely and economically so as to ensure and protect the best interests of the state." (*Del Norte Disposal, Inc.* v. *Department of Corrections, supra,* 26 Cal.App.4th at p. 1012, fn. 1.)

exclusive franchises for waste collection awarded by the local governments in which they are located.

### III. *Propriety of the Court's Order Vacating the Original Judgment*

■ The court's ruling that judgment should be entered in favor of Bay Cities and against Laidlaw was reduced to a written judgment entered on August 26, 1993. Laidlaw filed a notice of entry of judgment and notice of appeal on October 19, 1993.

On October 26, 1993, Bay Cities apparently submitted a different proposed judgment than that already entered. The second judgment was "entered" on October 28, 1993. On January 28, 1994, the court sua sponte issued an order setting aside the first judgment entered in August 1993. Laidlaw contends the court inappropriately set aside the first judgment. We agree.

The second judgment entered by the court varies materially from the first judgment in that the first judgment's incorporation of the stipulation for declaratory judgment between Laidlaw and Edco[10] is eliminated from the second judgment. In addition, the second judgment states Bay Cities is not liable to pay a franchise fee to the City unless the City imposes one for the use of its public rights-of-way, whereas the first judgment is silent on the issue of franchise fees.

"As a general rule, a duly perfected appeal divests the trial court of further jurisdiction in the cause except with respect to collateral matters [such as a motion for new trial]." (*Foggy* v. *Ralph F. Clark & Associates, Inc.* (1987) 192 Cal.App.3d 1204, 1211 [238 Cal.Rptr. 130], citing *Neff* v. *Ernst* (1957) 48 Cal.2d 628, 633-634 [311 P.2d 849]; see Code Civ. Proc., § 916.)[11] After perfection of an appeal, the trial court "may not vacate or amend a judgment or order valid on its face, or do any other act which would affect the rights of the parties or the condition of the subject matter." (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 6, p. 36.)

Here, the court lost jurisdiction to materially modify or vacate the first judgment after Laidlaw filed its notice of appeal in October 1993. Accordingly, we reverse the court's order setting aside the judgment entered on August 26, 1993, and treat this appeal as being taken from that judgment.

---

[10]See footnote 1, *ante.*

[11]Code of Civil Procedure section 916, subdivision (a) provides, in pertinent part, that "the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order, but the trial court may proceed upon any other matter embraced in the action and not affected by the judgment or order."

## DISPOSITION

The judgment entered on August 26, 1993, is affirmed. The court's order of January 28, 1994, setting aside that judgment is reversed. The judgment entered on October 28, 1993, is null and void. Respondent shall recover its costs on appeal.

Nares, J., and McDonald, J., concurred.