[No. B151606. Second Dist., Div. Six. May 14, 2002.]

CITY OF MALIBU, Plaintiff and Appellant, v.
SANTA MONICA MOUNTAINS CONSERVANCY et al., Defendants
and Respondents.

**1380**

---

**COUNSEL**

Christi Hogin, City Attorney; Bannan, Green, Frank & Terzian, Richard R. Terzian, Robert J. Tyson for Plaintiff and Appellant.

Nossaman, Guthner, Knox & Elliott, Robert I. McMurry and Scott N. Yamaguchi for Defendants and Respondents.

Bill Lockyer, Attorney General, Richard M. Frank, Chief Assistant Attorney General, J. Matthew Rodriquez, Assistant Attorney General, John A. Saurenman and Rosana Miramontes, Deputy Attorneys General, for the People of the State of California as Amicus Curiae on behalf of Defendants and Respondents.

## OPINION

**GILBERT, P. J.**—Here we hold that the Santa Monica Mountains Conservancy is subject to local land use regulation. (Pub. Resources Code, § 33008.)

Appellant City of Malibu (City) seeks to regulate commercial uses on 22 acres of property within its boundaries owned by respondent Santa Monica Mountains Conservancy (Conservancy), a state agency. It filed an action to obtain a declaration that the Conservancy is not immune from local regulation and an injunction to prohibit commercial use of the property until an alleged violation of the California Coastal Act of 1976 (Pub. Resources Code, § 30000 et seq.) is resolved.

The trial court granted summary judgment to the Conservancy and denied the injunction. Under compulsion of Public Resources Code section 33008, we reverse the judgment on the declaratory relief action. Because the alleged Coastal Act violation is pending before the Coastal Commission, we let stand the judgment denying the injunction.

### FACTS

The facts are undisputed. In 1993, Barbra Streisand donated her 22-acre estate on Ramirez Canyon Road in the City to the Conservancy. The Conservancy was created by the Santa Monica Mountains Conservancy Act, Public Resources Code sections 33000-33215 (Act), to acquire and manage property and award grants to other governmental and nonprofit agencies for recreational, open space, park and conservation purposes in the Santa Monica Mountains. (*Tucker Land Co. v. State of California* (2001) 94 Cal.App.4th 1191, 1194 [114 Cal.Rptr.2d 891].) The Conservancy is under the management and control of the state's Resources Agency. (Pub. Resources Code, § 33200, subd. (a); *Cooper v. Mountains Recreation & Conservation Authority* (1998) 61 Cal.App.4th 1115, 1117 [71 Cal.Rptr.2d 858].)

The property is managed by respondent the Streisand Center for Conservancy Studies (Streisand Center), a nonprofit corporation. The Streisand

Center is operated and managed by respondent Mountains Recreation and Conservation Authority (MRCA), a joint powers authority consisting of the Conservancy, the Conejo Recreation and Park District, and the Rancho Simi Recreation and Park District.[1]

The property is zoned R-1 and contains five residences. After the property was donated to the Conservancy, it became the headquarters of MRCA and was used for a variety of revenue-raising events to support the Conservancy, including garden tours, weddings, filmings, picnics, banquets, business dinners, receptions, fundraisers, bar mitzvahs, retreats, seminars and conferences.

The City filed a complaint for declaratory and injunctive relief and abatement of nuisance in 1999 alleging that the Conservancy was required to obtain special use permits from the City prior to holding commercial events on the property and that an altered streambed on the property violated the California Coastal Act. The trial court granted the City's motion for preliminary injunction restraining most commercial events on the property until the case was decided.

The parties brought cross-motions for summary adjudication on the City's declaratory relief and abatement of nuisance claims. (The nuisance claim was submitted on an agreed statement of facts.) The City asserted it was entitled to judgment as a matter of law on its action for declaratory relief because the state had consented to local land use regulation for property owned by state agencies in Government Code sections 53090 and 53091.

Government Code section 53091, subdivision (a) states in part: "Each local agency shall comply with all applicable building ordinances and zoning ordinances of the county or city in which the territory of the local agency is situated." "Local agency" is defined in Government Code section 53090, subdivision (a) as "an agency of the state for the local performance of governmental or proprietary function within limited boundaries. 'Local agency' does not include the state, a city, a county . . . ."

The City also argued that it was entitled to judgment as a matter of law on the Conservancy's affirmative defenses of waiver and estoppel, laches and statute of limitations. The Conservancy's motion for summary adjudication was based primarily on the affirmative defense of sovereign immunity. The trial court concluded that the Conservancy was not subject to Government Code sections 53090 and 53091 and was immune from the City's zoning

---

[1]For convenience we refer to respondents as Conservancy.

regulations. The trial court found in favor of the Conservancy on the Coastal Act claim as well.

## DISCUSSION

■ A trial court's grant of summary judgment is reviewed de novo. (*Carlson v. Blatt* (2001) 87 Cal.App.4th 646, 649 [105 Cal.Rptr.2d 42].) To the extent issues on appeal from a summary judgment involve the interpretation of a statute, they are issues of law subject to independent review. (*Modern Paint & Body Supply, Inc. v. State Bd. of Equalization* (2001) 87 Cal.App.4th 703, 707 [104 Cal.Rptr.2d 784].)

■ A state agency is immune from local regulation unless the Legislature expressly waives immunity in a statute or the California Constitution. (*Bame v. City of Del Mar* (2001) 86 Cal.App.4th 1346, 1358 [104 Cal.Rptr.2d 183]; *Laidlaw Waste Systems, Inc. v. Bay Cities Services, Inc.* (1996) 43 Cal.App.4th 630, 635 [50 Cal.Rptr.2d 824]; *Del Norte Disposal, Inc. v. Department of Corrections* (1994) 26 Cal.App.4th 1009, 1013 [31 Cal.Rptr.2d 746].) In the trial court and on appeal, the parties expended considerable effort debating whether Government Code sections 53090 and 53091 apply to the Conservancy. Government Code section 53091 generally requires "local agencies" to comply with the building and zoning ordinances of cities and counties in which they are situated. It is part of a statutory scheme enacted in response to judicial opinions that give state agencies broad immunity from local regulatory control.

"[Government Code] [s]ection 53091 evinces a legislative intent to vest in cities and counties control over zoning and building restrictions, thereby strengthening local planning authority." (*City of Lafayette v. East Bay Mun. Utility Dist.* (1993) 16 Cal.App.4th 1005, 1013 [20 Cal.Rptr.2d 658]; see also *City of Santa Clara v. Santa Clara Unified Sch. Dist.* (1971) 22 Cal.App.3d 152, 158, fn. 3 [99 Cal.Rptr. 212] ["[Government Code] [s]ections 53090 through 53095 were primarily designed to insure that other local agencies which were not subject to such thorough control by the state could not claim exemption from city and county zoning requirements" (italics omitted)]; and see *City of Santa Cruz v. Santa Cruz City School Bd. of Education* (1989) 210 Cal.App.3d 1, 6 [258 Cal.Rptr. 101] ["these statutes reflect a determination that in general the interests served and benefits gained by local regulation of state agencies outweigh any interference such regulation may have on the functions performed by those agencies"].) Courts have narrowly interpreted exemptions to these statutes. (*City of Lafayette*, at p. 1017.)

The Conservancy disputes the City's contention that it is a local agency as defined in Government Code section 53090. The cases cited by the parties

are not helpful. "Labeling an entity as a 'state agency' in one context does not compel treatment of that entity as a 'state agency' in all contexts." (*Lynch v. San Francisco Housing Authority* (1997) 55 Cal.App.4th 527, 534 [65 Cal.Rptr.2d 620]; see also *City of Santa Cruz v. Santa Cruz City School Bd. of Education, supra,* 210 Cal.App.3d at p. 7 ["the current law concerning which agencies have to follow what local regulations is a tangle of prohibitions and exceptions, lacking a single articulable organizing principle"].) This is borne out by the parties' citation to the same cases to support contrary positions.

We do not decide whether the Conservancy is a local agency under Government Code sections 53090 and 53091 because the Act contains its own waiver statute. Public Resources Code section 33008 states: "The Legislature finds and declares that there are existing problems of substandard lots, incompatible land uses, conflicts with recreational use, and inadequate resource protection which, in some cases, cannot be addressed in a feasible manner by local government exercise of the police power or federal land acquisition as part of the Santa Monica Mountains National Recreation Area, and that it is necessary to enact the provisions of this division as a complement to the full exercise of the police power by local governments and the acquisition of lands by the federal government for the Santa Monica Mountains National Recreation Area. *Nothing in this division shall supersede or limit a local government's exercise of the police power derived from any other provision of existing law or any law hereafter enacted.*" (Italics added.)

The Conservancy contends that Public Resources Code section 33008 does not contain express language of waiver and that the purposes of the Act would not be served by construing the section as a waiver statute. The Conservancy asserts that the first sentence of section 33008 shows an intent to divest local agencies of their zoning power to remedy the fragmented, piecemeal planning that existed before the Conservancy Act. It construes the phrase "as a complement to the full exercise of the police power by local governments" as showing an intent to "encourage teamwork" among local agencies and the Conservancy. We disagree with this interpretation for several reasons.

Public Resources Code section 33008 states that "it is necessary to enact the provisions of this division as a *complement to the full exercise of the police power by local governments . . . .*" (Italics added.) " 'Comprehensive zoning has long been established as being a legitimate exercise of the police power.' " (*Big Creek Lumber Co. v. County of San Mateo* (1995) 31 Cal.App.4th 418, 423 [37 Cal.Rptr.2d 159], quoting *Beverly Oil Co.*

*v. City of Los Angeles* (1953) 40 Cal.2d 552, 557 [254 P.2d 865]; see also *City of Burbank v. Burbank-Glendale-Pasadena Airport Authority* (1999) 72 Cal.App.4th 366, 376 [85 Cal.Rptr.2d 28] ["Land use regulation is an exercise of a city's inherent police power . . . which must always be reposed somewhere"]; *DeVita v. County of Napa* (1995) 9 Cal.4th 763, 782 [38 Cal.Rptr.2d 699, 889 P.2d 1019] [same].) To "complement" means to make up a deficiency in another thing, to augment, to enhance, to enrich. (See, e.g., *Xiloj-Itzep v. City of Agoura Hills* (1994) 24 Cal.App.4th 620, 643 [29 Cal.Rptr.2d 879] ["the Ordinance does not duplicate or conflict with the Vehicle Code. Rather, it *complements* the Vehicle Code"].) Use of the word "complement" with "full exercise of the police power" indicates a legislative intent to augment and enhance the City's ability to regulate Conservancy property rather than to restrict this power in any way.

The next sentence in Public Resources Code section 33008 supports waiver of immunity: "Nothing in this division shall supersede or limit a local government's exercise of the police power derived from any other provision of existing law or any law hereafter enacted." In this sentence, the Legislature emphasizes its intention that a local government exercise the police powers reserved to it under article XI, section 7 of the California Constitution and the state Planning and Zoning Law, Government Code section 65000 et seq. The Conservancy's interpretation of section 33008 ignores a significant portion of the statute.

The Conservancy argues that the objectives of the Act cannot be met if the City is permitted to regulate land use. We are not persuaded. The general objectives underlying legislation "cannot supplant the intent of the Legislature as expressed in a particular statute." (*Fuentes v. Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1, 8 [128 Cal.Rptr. 673, 547 P.2d 449].) Public Resources Code section 33008 expresses a legislative intent to enhance, not supersede, a local government's police power.

We do not agree with the Conservancy that the City's ability to impose reasonable land use regulations renders the Conservancy's power illusory. The Conservancy's assertion is based on the pessimistic assumption that land use review by the City will result in an arbitrary veto of the Conservancy's plans and goals. But it is presumed that a public agency will reasonably apply its land use regulations. Moreover, its actions are subject to judicial review. (*City of Burbank v. Burbank-Glendale-Pasadena Airport Authority, supra,* 72 Cal.App.4th at p. 377.)

The Conservancy argues that if Public Resources Code section 33008 is construed so that the City retains its zoning authority over Conservancy

property, then Public Resources Code section 33204 would be surplusage because "[u]nder Section 33204, local governments may play a role in a certain category of cases; where the Conservancy awards grants or makes loans to various public entities . . . ." We disagree. The provisions for project approval by local agencies in this section, when read in context with section 33008, support the Legislature's intent that the City retain land use regulatory authority over the property within its jurisdiction.

The Conservancy contrasts the language of the Act with waivers of immunity in Public Resources Code sections 32612, subdivision (b), 32613, subdivision (b), and Health and Safety Code section 40414. The Conservancy points out that "the Legislature has no difficulty expressly waiving sovereign immunity in specific provisions that have no counterpart in the Conservancy Act." For example, Public Resources Code sections 32612, subdivision (b) and 32613, subdivision (b) state that the San Gabriel and Lower Los Angeles Rivers and Mountains Conservancy must conform to specific plans and zoning regulations of local agencies within the area of the conservancy. Health and Safety Code section 40414 states that the South Coast Air Quality Management District may not infringe on the authority of counties and cities to control land use.

It is true these sections contain express references to "zoning" and "land use" that are absent from Public Resources Code section 33008. These examples, however, show only that in creating state agencies over the decades, the Legislature used language it deemed appropriate at the time to convey its intent that local governmental agencies retain their police power authority over certain state agencies.

We grant judicial notice of the voluminous legislative history of the Act requested in the Conservancy's fervid petition for rehearing. Contrary to the Conservancy's contention, the legislative history abundantly supports our conclusion that Public Resources Code section 33008 does not deprive the City of its police power. As just one example, the floor statement by the Act's legislative sponsor, then Assemblyman Howard Berman, states that the proposed statute would "*not* . . . damage 'home rule' in land use matters in the Santa Monica Mountains. [¶] This statement can be supported by the following facts . . . . [The proposed statute] has: 1. *No* regulatory or permit power. [¶] 2. *No* regional or state land use control. [¶] . . . 6. *No* limitation on local jurisdiction's police powers." (Assem. Bill No. 1512 (1979-1980 Reg. Sess.), floor statement by Assemblyman Howard L. Berman, original italics.)

In a subsequent letter to the Governor urging his signature on the legislation, Berman wrote that the Conservancy was "solely empowered to coordinate—among local and federal government and private individuals—various

aspects of Mountains zone land acquisition, development and preservation" and has "no regulatory or permit powers. That power still rests with local governments." (Assemblyman Howard L. Berman, letter to Governor Edmund G. Brown, Jr., Sept. 20, 1979.)

These statements and the many others like it in the legislative history leave no doubt that the City retains its police power to regulate uses on Conservancy property. But the Conservancy is not restricted from accomplishing its statutory purpose to preserve open space and recreational resources. It may make less intense use of the property it acquires than local regulation permits.

Because we decide that the City may regulate commercial uses on the Conservancy's property, we need not decide whether private parties contracting for use of the property are entitled to immunity.

■ We agree with the Conservancy that the court is in no position at this time to determine the Coastal Act claim. (See *Farmers Ins. Exchange v. Superior Court* (1992) 2 Cal.4th 377, 390 [6 Cal.Rptr.2d 487, 826 P.2d 730] [discussing doctrine of primary jurisdiction].)

The judgment of the trial court is reversed in part and affirmed in part. The parties shall bear their own costs.

Yegan, J., and Coffee, J., concurred.

A petition for a rehearing was denied June 13, 2002, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied August 14, 2002. Kennard, J., was of the opinion that the petition should be granted.