Filed 6/1/15  La Marr v. La Rocco CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| DAYMOND ALAN LA MARR,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>LYNDA LEE LA ROCCO, Individually and as Trustee, etc.,<br><br>    Defendant and Respondent. | B256696<br><br>(Los Angeles County<br>Super. Ct. No. BP137540) |

APPEAL from an order of the Superior Court of Los Angeles County, David J. Cowan, Judge.  Affirmed.

Moravec, Varga & Mooney, Henry J. Moravec III, Linda M. Varga, for Plaintiff and Appellant.

Towle Denison Smith & Maniscalco, Charles G. Smith and Dana M. Silva for Defendant and Respondent.

_____

Daymond Alan La Marr, a beneficiary of his deceased mother's irrevocable trust, petitioned the probate court for an order removing his sister, Lynda La Rocco, as trustee, compelling her to return trust property to the trust and surcharging her for damages caused by her breach of her fiduciary duties. Pursuant to the parties' stipulation, the court entered an order bifurcating from the other issues presented whether La Rocco had validly exercised an option granted to her as a trust beneficiary to purchase her mother's home for $100,000 and whether she had breached any duty as the trustee of the trust in facilitating that transaction. After a hearing solely on the bifurcated option issue, the court ruled La Rocco had acted properly as beneficiary and trustee. We affirm.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Family Trust*

In 1987 Agnes La Marr and Daymond H. La Marr, La Rocco and La Marr's parents, executed a revocable living trust, naming each other as beneficiary and successor trustee. After Daymond's[2] death in 1995, Agnes became the sole trustor and beneficiary and amended the trust twice, once in January 1999 and again in August 2002. La Rocco, Agnes's daughter and caregiver, was appointed successor trustee upon Agnes's death, at which point the trust became irrevocable. The trustee was directed to divide the trust estate into 10 equal shares and to distribute four shares to La Rocco, three shares to La Marr and three shares to Michael, Agnes's disabled son, in accordance with a special needs subtrust.

### 2. *The Purchase Option*

Article 2.3.4 of the trust, also added by amendment in 2002, created an express exception to this distribution plan, granting La Rocco the option to purchase Agnes's home for the sum of $100,000 in lieu of taking her distributive share: "Notwithstanding

---

[1] The probate court's order is appealable. (See Code Civ. Proc., § 904.1, subd. (a)(10); Prob. Code, § 1300, subds. (a), (c).)

[2] For convenience and clarity we refer to La Marr's parents and his brother, Michael, who all share the La Marr surname, by their first names.

the above provisions, and prior to making distributions of the above shares, LYNDA LA MARR LA ROCCO shall have the option of purchasing from the trust estate, subject to any encumbrances thereon, trustor's residence (the real property located at 1975 Kerns Avenue, San Marino, California) for the sum of $100,000 in lieu of her above distributive share of the trust estate. Said option shall be exercised by giving written notification of her intent to do so within 90 days of the date of death of trustor. Once she has exercised said option, [La Rocco] shall have 6 months from the date of said exercise to pay said option price ($100,000) to the successor trustee, who shall then convey title to said property to [La Rocco], free of trust, subject to any encumbrances thereon. The remaining trust assets shall then be distributed as provided above, except that the shares created above for the benefit of [La Rocco] shall be deemed to have lapsed (i.e. distribution shall take place in such a manner as if [La Rocco] [had] predeceased trustor leaving no issue then living."

3. *Agnes's Death and La Rocco's Exercise of the Option*

Agnes died January 16, 2012. On April 9, 2012 La Rocco provided both her brothers with written notice of her intent as beneficiary to exercise the purchase option in accordance with the trust terms. In September 2012, within the six-month deadline, La Rocco effected her purchase of the San Marino home through a multi-step escrow transaction.

On September 4, 2012, La Rocco, on behalf of the trust, signed a grant deed transferring the San Marino property from the trust to herself, "Lynda L. La Rocco, a Married Woman, as her sole and separate property." She deposited the grant deed into an escrow account managed by College Escrow, Inc. The initial escrow instructions dated July 27, 2012 stated that La Rocco, in her individual capacity as buyer, would finance the purchase through a personal loan in the amount of $200,000, secured by a deed of trust on the property.[3] On September 26, 2012 La Rocco in her individual capacity

---

[3] The initial instructions dated July 27, 2012 and supplemental escrow instructions dated September 26, 2012 stated the total consideration for the transaction would be $300,000, comprised of a $200,000 loan secured by a deed of trust and a $100,000

consummated a personal loan of $200,000 from Timothy C. Harrison and Lauri E. Harrison, signed a promissory note and a deed of trust covering the property in favor of the Harrisons to secure the loan and deposited that deed of trust in the escrow account. On September 27, 2012, in accordance with their obligations under the note, the Harrisons deposited $200,000 into the escrow account. Then, on Friday, September 28, 2012, after the escrow officer confirmed the receipt of the loan proceeds, the grant deed and deed of trust were recorded with the Los Angeles County Recorder's Office; the escrow officer also arranged on that date to have the $100,000 purchase price wired to the trust's bank account. Those funds were credited to the trust's bank account on Monday, October 1, 2012.[4] In November 2012 La Rocco refinanced her $200,000 loan by obtaining a new loan from a different lender, secured by a new deed of trust, and repaying the Harrisons in full.

4. *La Marr's Petition for Removal, Return of Trust Property and Surcharge*

On November 1, 2012 La Marr petitioned to remove La Rocco as trustee and surcharge her for breaching her fiduciary duty to the trust. The petition alleged La Rocco had misappropriated trust assets by using the house, the most significant trust asset,[5] as collateral to obtain the loan she needed to exercise the purchase option. As a result, he alleged, she deprived him and his brother of the shares in the house they would have

---

"equity credit," defined as "gift equity between family members" in lieu of a down payment and closing costs. Both sets of instructions, however, which La Rocco claimed reflected a mistake by the escrow company regarding the $100,000 for the trust, were later superseded by new instructions that stated La Rocco would finance the purchase with a $200,000 secured personal loan. Those amended instructions did not mention any "equity credit."

[4] La Rocco explained the remaining funds from the loan were used to pay closing costs and close an existing line of credit on the house.

[5] The parties agreed the largest asset of the trust was Agnes's San Marino home, but disagreed as to the home's value. La Marr supplied evidence the value as of June 2013 was nearly $1.5 million, while La Rocco insisted without citing supporting evidence that the value was closer to $400,000.

received had the option not been exercised.  Over the next several months, La Marr filed six supplemental petitions alleging additional facts and other breaches of fiduciary duties.

5.  *The Court's Bifurcation of, and Hearing on, the Option Issue*

On January 27, 2014, following a stipulation of the parties, the court bifurcated the option issue—defined as whether La Rocco had "validly exercise[d] the [o]ption to purchase the [t]rust [h]ome in accordance with the terms of the trust"—from the other issues presented in the petitions and ordered that issue adjudicated first.  The court stayed discovery on the remaining issues, ordered a briefing schedule and set a hearing date of March 14, 2014.  Although La Rocco submitted extrinsic evidence with her trial brief to explain Agnes's intent, she and La Marr agreed, and the court found, the trust language was unambiguous and the issue presented was one of law.  After full briefing and a hearing, the probate court ruled, based on the undisputed facts of La Rocco's transaction as detailed above, that La Rocco had validly exercised the option without breaching her fiduciary duty to the trust.  La Marr filed a timely notice of appeal.

**DISCUSSION**

1.  *Governing Law and Standard of Review*

The trustee has a duty to administer the trust in accordance with the terms of the trust and his or her fiduciary obligations to trust beneficiaries.  (*Moeller v. Superior Court* (1997) 16 Cal.4th 1124, 1131; *Moxley v. Title Ins. & Trust Co.* (1946) 27 Cal.2d 457, 463.)  Absent an ambiguity in the trust instrument and conflicting extrinsic evidence as to the meaning of the ambiguous terms, the interpretation of language in a trust is a question of law subject to de novo review.  (*Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 604; *Burck v. George* (1994) 7 Cal.4th 246, 254.)  In addition, although the trial court's factual findings are generally reviewed for substantial evidence, when, as here, the court's findings are based on undisputed facts, the question is a legal one subject to the appellate court's independent review.  (*Brach v. Omni Loan Co., Ltd.* (2008) 164 Cal.App.4th 1312, 1320; *Laidlaw Waste Systems, Inc. v. Bay Cities Services, Inc.* (1996) 43 Cal.App.4th 630, 635.)

5

2. *The Probate Court Properly Ruled La Rocco Had Validly Exercised the Option*

La Marr contends La Rocco violated the terms of the trust and engaged in unlawful self dealing when, as trustee, she transferred the house to herself in her individual capacity before paying the $100,000 to the trust. La Marr fundamentally mischaracterizes the transaction. Contrary to La Marr's contention, La Rocco's mere execution of the grant deed on behalf of the trust did not prematurely transfer the property from the trust to La Rocco. A transfer of real property is not legally effective until the deed is delivered. (Civ. Code, § 1054 ["[a] grant takes effect, so as to vest the interested intended to be transferred, only upon its delivery by the grantor"]; *Miller v. Jansen* (1943) 21 Cal.2d 473, 476; *Whitney v. American Ins. Co.* (1900) 127 Cal. 464, 467.) By placing the grant deed in the escrow account, La Rocco, as trustee, ensured that delivery would not occur until the performance of the escrow condition—that is, the deposit of $200,000 into escrow on behalf of La Rocco in her individual capacity, with $100,000 of that sum designated for payment to the trust. (See Civ. Code, § 1057 ["A grant may be deposited by the grantor with a third person, to be delivered on performance of a condition, and, on delivery by the depositary, it will take effect. While in the possession of the third person, and subject to condition, it is called an escrow."].) La Rocco neither prematurely conveyed trust property nor breached any duty to the trust merely by signing the grant deed and depositing it into the escrow account. She would have been required to do the same no matter how she had arranged to pay the purchase price.

La Marr alternatively contends that, if the grant deed was ineffective at the time La Rocco signed it, then she invalidly used trust property—property she did not yet own—as collateral to obtain a personal loan; and she was only able to do this by using her position as trustee to sign the grant deed to herself before she paid any money to the trust. This argument, too, misapprehends the nature of the transaction as well as La Rocco's distinct roles as trustee and beneficiary. Neither La Rocco's execution of the grant deed as trustee nor her execution of the deed of trust to the Harrisons in her individual capacity as beneficiary actually took effect until delivery of the deeds by the

6

escrow officer. (See Civ. Code, § 1057 [grant deed deposited in escrow is not in effect until delivery by the depositary].) Once the escrow officer confirmed receipt of the $200,000 and thus satisfaction of the escrow condition, the officer transferred the property to La Rocco in her individual capacity and, at the same time, conveyed the deed of trust to the Harrisons. The simultaneous nature of the transaction resulted in La Rocco using only her own property as collateral to secure the loan, not trust property. (See generally *Claussen v. First American Title Guaranty Company* (1986) 186 Cal.App.3d 429, 437 ["An escrow is typically the mutual exchange of instruments through a third party and delivery to each party is conditioned on deposit by the other party. [Citations.] An escrow imposes concurrent conditions which are mutually dependent, requiring simultaneous performance"].)[6]

La Marr disputes the characterization of the transaction as simultaneous, observing the conveyance to La Rocco actually occurred before the money was received by the trust. La Marr is correct that the conveyances of both the grant deed and the deed of trust encumbering the property were effected and recorded on September 28, 2012, while the $100,000 was not actually credited to the trust's bank account until Monday, October 1, 2012. But, the escrow officer did not deliver the grant deed to La Rocco prior to receipt of the purchase price. To the contrary, the escrow officer waited until the escrow condition had been fulfilled—deposit of $200,000 into the escrow—before arranging for the conveyances to be recorded and $100,000 of the loan proceeds to be deposited in the trust bank's account. Although, due to the nature of business realities—time for checks to clear and deposits to be credited—the money was not actually credited to the trust's bank account until the next business day, this alone does not evidence a breach of

---

[6] La Rocco's focus on the date the transaction was recorded, September 28, 2012, as the date the transfer became legally effective is correct, albeit not for the reason she advances. The deed was delivered on September 28, 2012. It is the delivery that results in the legal transfer of property, not the date the transaction is recorded. (*Stewart v. Silva* (1923) 192 Cal. 405, 410; see Civ. Code, § 1217 ["an unrecorded instrument is valid as between the parties thereto and those who have notice thereof"]; *Casey v. Gray* (1993) 13 Cal.App.4th 611, 614 [same].)

7

fiduciary duty on La Rocco's part, nor an invalid exercise of her option as beneficiary. It certainly did not cause any damage to the trust.

La Marr's reliance on several trust provisions (articles 2.3.4, 4.1.2 and 5.3) is also misplaced. None of those provisions precluded La Rocco's conduct either as trustee or beneficiary. Article 2.3.4 granted La Rocco as beneficiary the option to purchase the San Marino home for $100,000 in lieu of her distribution and permitted her to exercise the option prior to the distribution of the rest of the estate. Nothing in that article dictated the manner in which La Rocco could provide the purchase price; certainly, nothing prohibited her from obtaining a personal loan to exercise the option.

Article 4.1.4 permitted the trustee "[t]o borrow money for any valid trust purpose; to place, replace, renew or extend any encumbrance upon any trust property by mortgage, deed of trust, pledge or otherwise." The scope of that provision is irrelevant; for La Rocco did not encumber trust property. As explained, she encumbered her own property concurrently with the delivery of the grant deed and funding of her personal loan, a transaction that was possible because of the way the escrow was structured.

Article 5.3 is similarly immaterial. That article, a spendthrift provision, prohibited trust beneficiaries from encumbering trust property prior to distribution.[7] (See *Chatard v. Oveross* (2009) 179 Cal.App.4th 1098, 1104 [purpose of spendthrift provision is to protect income and principal interests of beneficiaries from third party claims as long as the income or principal is properly held by trust].) As discussed, however, La Rocco, crafted the transaction to encumber the property simultaneously with, rather than prior to, distribution to her. She did not encumber property while it remained in the trust.

Finally, La Marr suggests La Rocco improperly used monies from what would otherwise be his and his brother's distribution to pay trust costs. Those issues were not

---

[7]     Article 5.3 provides in part: "SPENDTHRIFT PROVISION: Excepting those instances where a trustee hereunder is exercising the power to borrow money, place, replace, renew or extend any encumbrance upon any trust property by mortgage, deed of trust, pledge or otherwise, or establish lines of credit pursuant to Article 4 of this trust; no interest in the principal or income of any trust created under this trust instrument shall be encumbered or pledged before actual receipt by a beneficiary. . . ."

8

litigated in the first part of the bifurcated hearing, and we do not consider them.  We hold only that the court properly found as a matter of law that La Rocco had validly exercised her purchase option without breaching any fiduciary duty she owed to the other trust beneficiaries.

**DISPOSITION**

The order is affirmed.  La Rocco is to recover her costs on appeal.


PERLUSS, P. J.


We concur:


ZELON, J.


IWASAKI, J.*

---

*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.